Ruth Ellard Jones appeals from a partial final summary judgment entered in favor of Alabama Farm Bureau Mutual Casualty Company (hereinafter "Farm Bureau"). We affirm in part, reverse in part, and remand.
On November 15, 1983, Mrs. Jones and her husband, John W. Jones, experienced difficulty with the electrical service to their home; as a result of the problem there was damage to several items of personal property in the house, including a floor furnace and a television set.
Mrs. Jones had a standard homeowner's insurance policy issued by Farm Bureau in effect. Although the insurance policy provided coverage for loss or damage to Mrs. Jones's house and its contents directly caused by such perils as lightning, the policy excluded coverage of losses or damage caused indirectly, such as from a power surge resulting from a tree limb falling on the service entrance line.
The cause of the damage to the Joneses' personal property is at the core of the dispute between Mrs. Jones and Farm Bureau. Mrs. Jones claims that the damage to the personal property was caused by lightning striking the house at approximately 12:30 a.m. on November 15, 1983. Farm Bureau contends that the damage resulted from a power surge when a tree limb fell onto and damaged the power service entrance line to the Joneses' house at about 7:00 a.m. on the same morning as the lightning strike allegedly occurred. Mrs. Jones does not dispute that a tree limb fell onto the service entrance line, but argues that it was the lightning strike and not the damage to the service entrance line that caused the damage.
Mrs. Jones filed a proof of loss in the Marion Farm Bureau office on November 18, 1983, and Mr. Jones met with a Farm Bureau claims adjuster, Andy Kratzer, at the Marion office on November 22, 1983. Mr. Jones's version and Mr. Kratzer's version of what was said at that meeting differ. Mr. Kratzer contends that Mr. Jones told him that the damage to the personal property was caused by a power surge that occurred when the tree limb fell on the service entrance line. Mr. Kratzer also contends that Mr. Jones told him that it was not necessary for an electrician to examine the damaged personal property because it was ruined. On the other hand, Mr. Jones contends that, although he told Mr. Kratzer that a tree limb had in fact fallen on the service entrance line at around 7:00 a.m. on November 15, he also told Mr. Kratzer that the damage to the personal property was not caused by this later incident, but, rather, that the damage was caused by the lightning strike which occurred earlier that morning. Furthermore, Mr. Jones asserts that Mr. Kratzer told him that Farm Bureau would send an electrician to his home to examine the damaged property, but that Farm Bureau did not send anyone to the Joneses' home.
On November 29, 1983, Mr. Kratzer notified Mrs. Jones that Farm Bureau would not provide coverage under the insurance policy because "in talking with Mr. Jones, I learned that the cause of the damage resulted when a tree limb fell on the power line and damaged it causing a power surge." Mr. Kratzer alone made the decision to deny coverage, and his decision was based solely upon Mr. Jones's alleged statement to him on November 22.
The record contains a copy of a letter that Mrs. Jones allegedly sent to Farm Bureau shortly after receipt of Kratzer's November 29 letter; her letter stated that lightning, and not damage to the service entrance line, caused the damage to the personal property and that Mr. Kratzer *Page 398 
should revise his evaluation. There is no evidence that Farm Bureau responded to this letter.
An attorney, James M. Barnes, was retained by Mrs. Jones to pursue the matter. Barnes wrote Kratzer on January 18, 1984, asking him to reconsider Mrs. Jones's claim. On January 25, 1984, Mr. Kratzer sent an inter-office communication to Robert Jones that acknowledged receipt of Mr. Barnes's letter and stated that Kratzer "originally closed this claim as a 'no claim,' since the insured's husband advised me on November 22, 1983, that the cause of this damage was a limb falling on a power line and not lightning." Kratzer asked Robert Jones for his opinion about how to deal with the situation. In another inter-office communication dated April 20, 1984, Kratzer stated that he had received copies of bills and a damage statement from Mr. Barnes regarding Mrs. Jones's claim, and Kratzer asked Robert Jones if he should continue to deny the claim. Robert Jones told Kratzer in an April 24, 1984, communication to stick with the denial of the claim.
Mrs. Jones retained a new attorney, Jack Meigs, to represent her. Mr. Meigs wrote to Bill Oswalt, senior vice-president of underwriting for Farm Bureau, on September 11, 1984, asking that the claim be reconsidered and stating that if the claim was denied, Mrs. Jones would be forced to file suit. Apparently Mr. Oswalt channeled Mr. Meigs's letter to Farm Bureau's district claims manager, Hilton Godwin. In a communication dated September 14, 1984, Mr. Godwin asked Kratzer to verify that a limb actually fell on the Joneses' service entrance line and caused a power surge. Mr. Godwin stated in an affidavit that he contacted another Farm Bureau claims adjuster, Don Hale, to verify the cause of the loss. Mr. Hale contacted Gene Clowdus of Alabama Power Company. Mr. Clowdus stated in an affidavit:
 At the request of Mr. Hale, we researched our files and found that on the date we had received the call from Mr. or Mrs. Jones that they had their lights out and Mr. Harley Harrison was dispatched to their residence to make repairs. This date was November 15, 1983.
 According to Mr. Harrison, a limb had blown out of tree, hit the line and torn it down. This was a result of a small windstorm.
 According to my recollection, I talked with Mr. Harrison and looked at the records and based on that it appeared that the damages to Mr. and Mrs. Jones' property was caused by the fact that the limb fell onto and broke the power line. I relayed this information to Mr. Hale.
Mr. Godwin stated in an affidavit:
 Mr. Hale contacted officials of the Alabama Power Company who reported that the plaintiffs' loss was not directly caused by lightning; the loss was caused by a limb falling across a power line. . . .
 Based on this investigation and information, I instructed Mr. Hale to deny the claim which he did in a conversation with Mr. Meigs on or about October 10, 1984. Mrs.
Mrs. Jones filed suit against Farm Bureau on October 22, 1984, alleging breach of contract and bad faith refusal to pay an insurance claim.
Farm Bureau filed a motion for partial summary judgment directed to Mrs. Jones's bad faith claim. Farm Bureau offered the affidavits of Oswalt, Godwin, and Clowdus in support of its motion. In addition, Farm Bureau offered the affidavit of Harley Harrison. Harrison was the Alabama Power Company lineman who repaired the Joneses' service entrance line; he was interviewed by Hale on November 16, 1984. Harrison's affidavit states, in part:
 [I]n my opinion, any and all damage to his property or contents was caused when the limb fell out of the tree onto the line. There was no evidence of any lightning damage or any damage to the service, poles, connections or any of Mr. Jones' property resulting from a lightning strike.
Mrs. Jones offered the affidavit of her husband in opposition to summary judgment, in which Mr. Jones affirmed his denial of having told Kratzer that the personal property was damaged by the tree limb *Page 399 
falling on the service entrance line. The trial court granted the summary judgment for Farm Bureau on Mrs. Jones's bad faith claim.
On October 21, 1985, Mrs. Jones moved the trial court to vacate the grant of partial summary judgment and to allow her to amend her complaint by adding a count for fraud. Mrs. Jones offered the affidavit of Willard Scott, an appliance repairman, who stated that, in his opinion, the damage to Mrs. Jones's personal property was caused by lightning, not by a power surge. In addition, Mrs. Jones offered an affidavit of Harley Harrison, which was made after his initial affidavit that had been offered by Farm Bureau. The later affidavit reads in pertinent part:
 I told Mr. Hale what I saw and did. I told him that the neutral line was broken by a limb that fell on it. I told him I could not remember if one of the hot legs was loose.
 I told him that a broken neutral line can cause damage to appliances. The words "in my opinion" is the misuse of words. I cannot give an opinion in that I did not inspect any appliances in Mrs. Jones' house that were supposedly damaged. The night this happened there was a storm in the area and it was reported to me that there was lightning in the area. It is entirely possible that lightning could have struck and damaged the appliances before the line broke. I did tell him that I saw no signs of where lightning may have struck but I also told him and state now that lightning may strike and leave no signs on the power lines.
 My prior affidavit and statements should not be taken to mean that it was my opinion that the limb breaking the line caused the damages to the appliances. I personally do not know what caused the damage to those appliances and I told Mr. Hale that to the best of my recollection.
The trial court denied the motion to vacate and struck the amendment alleging fraud.
Mrs. Jones argues on appeal that the trial court erred by granting Farm Bureau's summary judgment on her bad faith claim and by striking the amendment to her complaint alleging fraud. We are of the opinion that the trial court erred by granting the summary judgment, but correctly struck the amendment to the complaint.
 Summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
Ala.R.Civ.P. 56(c).
The affidavits and other documents presented in the instant case give rise to a material issue of fact related to Mrs. Jones's bad faith claim. As stated by this court in Blue Cross Blue Shield of Alabama v. Granger, 461 So.2d 1320, 1327-28
(Ala. 1984):
 [T]here are two "legs" or prongs to a bad faith action. We stated in Chavers [v. National Security Fire Casualty] 405 So.2d [1] at 7:
 "[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either '(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.' " (Emphasis added [in Granger].)
 It follows from this language that the plaintiff in a bad faith case may prove his case either by showing that the insurer refused to pay the claim, knowing there was no legitimate reason to refuse payment, or by showing that the insurer intentionally failed to investigate the claim to determine whether there was a legitimate reason for refusing payment.
 In regard to the intentional-failure-to-investigate aspect of bad faith, this Court stated in [Gulf Atlantic Life Insurance Co. v.] Barnes, 405 So.2d [916] at 924::
 "The relevant question before the trier of fact would be whether a claim was *Page 400 
properly investigated and whether the results of the investigation were subjected to a cognitive evaluation and review. Implicit in that test is the conclusion that the knowledge or reckless disregard of the lack of a legitimate or reasonable basis may be inferred and imputed to an insurance company when there is a reckless indifference to facts or to proof submitted by the insured. . . ."
Mr. Jones's affidavit provides a scintilla of evidence that raises a material issue of fact as to whether Farm Bureau, through Kratzer, intentionally failed to determine if there was a lawful basis for refusing to honor Mrs. Jones's claim.
Farm Bureau's argument in this case is twofold. First, it contends that the divergent positions of Mr. Kratzer and Mr. Jones as to what information Mr. Jones gave Mr. Kratzer creates an arguable reason for the denial of Mrs. Jones's claim because this factual dispute precludes Mrs. Jones from obtaining a directed verdict on her breach of contract claim. Second, it asserts that its investigation subsequent to Kratzer's initial denial of Mrs. Jones's claim produced information that gave it an arguable basis for denying the claim.
Mrs. Jones counters Farm Bureau's position by arguing that, if the dispute as to what information Mr. Jones gave to Mr. Kratzer creates an arguable basis for denying the claim, then an insurance company can defeat a claim of bad faith by simply misrepresenting what an insured said about a claim to create a factual dispute and preclude a directed verdict on the underlying breach of contract claim. Mrs. Jones also argues that Farm Bureau's "reinvestigation" was the only investigation of the claim and was conducted after the initial, actionable denial of the claim occurred. Furthermore, Mrs. Jones asserts that the subsequent investigation did nothing to support Farm Bureau's contention that it had an arguable basis for denying the claim, but, rather, merely verified the known fact that a limb fell onto and damaged the service entrance line.
We address Mrs. Jones's second issue first by noting that the investigation conducted by Farm Bureau after Kratzer's denial of the claim cannot serve as an arguable basis for denying the claim initially, because "whether an insurance company is justified in denying a claim under a policy must be judged by what was before it at the time the decision was made." NationalSavings Life Insurance Co. v. Dutton, 419 So.2d 1357, 1362
(Ala. 1982) (emphasis supplied). The record in the instant case indicates that Kratzer made the decision to deny the claim between November 22 and November 29, 1983. The record also indicates that Kratzer's sole reason for denying coverage was because of the statements allegedly made to him by Mr. Jones. Therefore, our focus with regard to Mrs. Jones's bad faith claim must be directed to the events occurring before Mr. Kratzer first denied Mrs. Jones's claim.
We now decide whether the dispute regarding the substance of the conversation between Mr. Kratzer and Mr. Jones creates an arguable reason for the denial of Mrs. Jones's claim. We hold that it does not. As stated in National Savings Life InsuranceCo. v. Dutton, supra:
 In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.
419 So.2d at 1362.
The instant case is not the normal or ordinary case. As stated previously, the sole basis for the initial denial of Mrs. Jones's claim by Mr. Kratzer was Mr. Jones's alleged statement to Kratzer. It is the resolution of this factual issue, alone, that will determine the viability of Mrs. Jones's bad faith claim. Clearly, if Mr. Jones told Mr. Kratzer that lightning *Page 401 
struck the house and that a tree limb fell on the service entrance line shortly thereafter, and that the damage to the service entrance line was the cause of the damage to the personal property, then Kratzer could have an arguable reason for summarily denying coverage. On the other hand, if Mr. Jones told Mr. Kratzer that he believed that the damage was caused by lightning, Mr. Kratzer would be under a duty to determine whether there was, in fact, any lawful basis for the denial of the claim. A simple examination of the personal property to determine the cause of damage would be sufficient.
Although the plaintiff's burden of proof in a bad faith action is great, it should not be insurmountable. Precluding a plaintiff's bad faith action by application of the "directed verdict on the contract claim" test when the disputed factual issue arises solely from a contradicted oral conversation between the insurer and the insured or a third person puts too onerous a burden on the plaintiff. Moreover, it would frustrate the purpose of the bad faith action by allowing an insurer simply to misrepresent the content of an oral conversation to avoid liability. Consequently, we hold that under the facts presented by the instant case, the trial court erred by granting partial summary judgment in favor of Farm Bureau on Mrs. Jones's bad faith claim, as there was a disputed factual issue to be decided by the trier of fact.
Mrs. Jones also contends that the trial court erred by striking the fraud amendment to her complaint. We disagree. An insurer's conduct in connection with the procurement of an insurance policy and the subsequent denial of a claim under the policy may support an ordinary fraud action. See, e.g.,McLaughlin v. Alabama Farm Bureau Mutual Insurance Co.,437 So.2d 86 (Ala. 1983); Aspinwall v. Gowens, 405 So.2d 134 (Ala. 1981); Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976). It is possible to state a cause of action for bad faith refusal to pay a claim and for ordinary fraud arising from a single set of facts, see, e.g., Aspinwallv. Gowens, supra, but we are of the opinion that Mrs. Jones has failed to state a claim for ordinary fraud in this case. The basis of Mrs. Jones's fraud count is stated in her brief as follows:
 Mrs. Jones alleges that Kratzer has fraudulently misrepresented Mr. Jones' statements to the company and to her, intentionally or recklessly and wantonly, for the purpose of denying her claim for lightning damage. Secondly, she alleges that the defendant has misrepresented the statements of Harley Harrison and has used these misrepresented statements as a basis to deny her claim.
Code 1975, § 6-5-101, defines legal fraud:
 Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.
And as reiterated in Ex parte Leo, 480 So.2d 572 (Ala. 1985):
 The essential elements of this tort are (1) a false representation (2) regarding a material existing fact (3) which the plaintiff relies upon (4) and is damaged by as a proximate result.
To sustain a fraud action, "the representee must have been deceived by and relied upon the representation as an inducement of his action or non-action." Old Southern Life Insurance Co.v. McConnell, 296 So.2d 183 (Ala.Civ.App. 1974). That portion of Mrs. Jones's fraud claim that is bottomed on Mr. Kratzer's alleged misrepresentation to Farm Bureau and to Mrs. Jones regarding Mr. Jones's statements on the basis of which Kratzer allegedly denied coverage, was properly stricken because there could have been no reliance by Mrs. Jones on this representation. It is evident that Mrs. Jones was not deceived and was not induced to act or fail to act in reliance upon the alleged misrepresentation.
Similarly, the remaining portion of Mrs. Jones's fraud count based upon Farm Bureau's alleged misrepresentation regarding the statement of Mr. Harrison was *Page 402 
properly stricken. The alleged misrepresentation of Harrison's statements, embodied in an affidavit, could not have been used by Farm Bureau as a basis for the denial of Mrs. Jones's claim, inasmuch as the initial interview of Mr. Harrison and the preparation of his affidavit occurred after Mr. Kratzer had denied the claim. Therefore, the alleged misrepresentation could not have been a proximate cause of any damage suffered by Mrs. Jones as a result of Mr. Kratzer's denial of her claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
JONES, ALMON, SHORES, BEATTY and HOUSTON, JJ., concur.
TORBERT, C.J., concurs specially.
STEAGALL, J., dissents.
MADDOX, J., is recused.