On May 29, 1984, Kizziah applied to Golden Rule Insurance Company for individual major medical health insurance, which became effective on June 4, 1984.
The completed application submitted by Kizziah to Golden Rule had asked questions relating to pre-existing conditions. On this application, Kizziah answered "no" to question 12(a), (b), (c), and (e):
 "12. Has any person in # 1 [Kizziah] had any indication, diagnosis, or treatment, within the last 10 years, of:
 "(a) any disorder of the lungs or respiratory system, such as hay fever or other allergies, asthma, tuberculosis or emphysema?
 "(b) any disorder of the heart or circulatory system, such as high blood pressure, heart attack, heart murmur, chest pain, irregular heartbeat, varicose veins or phlebitis?
 "(c) any disorder of the digestive system, such as ulcer, gastritis, intestinal disorders, colitis, gall bladder, hemorrhoids, hernia, or disorder of the pancreas, liver or spleen?
". . .
 "(e) any disorder of the genito-urinary system, such as kidney disorder, kidney stones, cystitis, prostatitis, or bladder infections?"
On June 29, 1984, Kizziah signed an amendment verifying the information on the original application:
 "The application of Grady F. Kizziah, dated May 29, 1984, is hereby amended as follows: *Page 945 
 "Grady F. Kizziah has had a complete recovery with no residual effects from a gunshot wound in 1978."
Based upon the personal and health history information provided on the application and the amendment to the application, and in consideration for a premium tendered, Golden Rule issued Kizziah a policy of individual major medical health insurance.
Subsequent to the issuance of the policy, Kizziah submitted his first major claim to Golden Rule for expenses incurred for hospitalization for and treatment of a large laceration in the area of his armpit, as well as for treatment of an abdominal bruit or murmur.[1] As part of its routine while investigating these claims, Golden Rule requested past and present medical records from the medical facilities and the physicians involved. These medical records revealed a history of an abdominal bruit or murmur as early as 1981 and the existence of a "horseshoe kidney" as early as 1971 or 1972. The records also showed that, prior to applying for insurance, Kizziah was aware of these conditions but failed to follow the doctor's recommendation to have an arteriogram performed regarding the bruit or murmur. After reviewing the requested medical records, the underwriting department of Golden Rule determined that had this medical information been disclosed at the time of the original underwriting, it would have declined to accept the risk of insuring Kizziah. Golden Rule's staff attorney also acknowledged that the medical history provided by Kizziah was material to the risk assumed by Golden Rule and that no policy would have been issued if Kizziah had reported the correct medical information.
In a letter dated April 23, 1986, Golden Rule notified Kizziah that because of the material misstatements or active omissions made on his application and amendment, it was voiding his policy (setting it aside from the date of issue), refunding all premiums paid, and refusing payment for the expenses or claims submitted, due to the voidance of his policy.
Subsequently, Golden Rule sued for a declaratory judgment, asking the court to declare that the insurance contract with Kizziah was properly rescinded and that there was no coverage. Kizziah counterclaimed, alleging breach of contract, bad faith, fraud, and outrageous conduct on Golden Rule's part. Golden Rule then moved for summary judgment on all of Kizziah's counts. The trial court denied summary judgment on the breach of contract count, but granted summary judgment on the bad faith, fraud, and outrage counts.
This appeal concerns the summary judgment in favor of Golden Rule on Kizziah's claims for bad faith, fraud, and outrageous conduct. That order was made final pursuant to Rule 54(b), A.R.Civ.P.
 Summary Judgment
Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of fact must be resolved against the moving party. Autrey v. Blue Cross Blue Shield of Alabama, 481 So.2d 345 (Ala. 1985). This action was pending prior to June 11, 1987; therefore, Ala. Code 1975, §12-21-12, as amended, does not apply and the applicable standard of review is the scintilla rule.
 Bad Faith
This Court recognized the tort of bad faith in Chavers v.National Security Fire Casualty Co., 405 So.2d 1 (Ala. 1981), and adopted the standard of proof that an insured is required to meet in order to recover on a claim of bad faith:
 "[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either '(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional *Page 946 
failure to determine whether or not there was any lawful basis for such refusal.' " Id. at 7.
The Court took the position that every contract carries with it an implied-in-law duty of good faith and fair dealing,id. at 6; therefore, "bad faith" is the intentional failure by the insurer to perform this duty implied in law. Id. at 5.
In National Security Fire Casualty Co. v. Bowen,417 So.2d 179 (Ala. 1982), the Court set out the elements of the tort of bad faith:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." Id. at 183.
Kizziah admitted that he was aware from the language of the policy that any misstatements or erroneous information on his application could cause the policy to be voided and coverage denied. Even when Golden Rule asked Kizziah to supply additional information if there were any inaccuracies, Kizziah failed to do so.
This failure to provide Golden Rule with accurate medical information constitutes an arguable and legitimate reason for denying coverage and voiding the policy.
The trial court in this case determined that there was a genuine issue of material fact on the question of breach of contract and denied Kizziah's motion for summary judgment. Because the trial court determined that Kizziah was not entitled to summary judgment on the contract claim, it granted summary judgment for Golden Rule on the bad faith claim.
Ordinarily, if the evidence produced by either side creates a fact issue with regard to the contract claim, the bad faith claim must fail. To present a prima facie case of bad faith in a "normal" case, the offered proof must demonstrate that the plaintiff is entitled to a directed verdict on the contract claim. National Savings Life Insurance Co. v. Dutton,419 So.2d 1357 (Ala. 1982); Payne v. Nationwide Mutual Insurance Co.,456 So.2d 34 (Ala. 1984). Although the case before us does not involve a directed verdict, the Court in Armstrong v. LifeInsurance Co. of Virginia, 454 So.2d 1377 (Ala. 1984), noted that "the standards of review for a directed verdict and a summary judgment are essentially the same. Both are proper only where there is a complete absence of proof on a material issue or where there are no disputed questions of fact on which reasonable people could differ." Id. at 1379.
In Dutton, as in the instant case, the insurer received hospital and physicians' records of the insured pursuant to a claim for benefits. Upon review of this information, the insurer discovered past medical conditions not previously disclosed by the insured on the original application for coverage. This information was in direct contrast to the answers the insured gave to a question on the application. The insurer then notified the insured that it was denying the claim and cancelling the policy because of the conflict between the information on the application and the requested medical records. This Court took the position that such facts supported a reasonable basis for denying the claim, thereby defeating a tort action for bad faith. They further concluded that it was not necessary that the insured provided incorrect information with an intent to deceive; *Page 947 
it was necessary only that the insured have made an incorrect statement that was material to the acceptance of the risk or would have caused the insurer, in good faith, not to issue the policy.
Kizziah argues that because Golden Rule's motion for summary judgment on the contract claim was denied, summary judgment for Golden Rule on the bad faith claim was premature. In support of this argument, Kizziah cites Continental Assurance Co. v.Kountz, 461 So.2d 802 (Ala. 1984), where the Court ruled that the bad faith claim properly went to the jury, even though Kountz was not entitled to a directed verdict on the contract count. However, Kountz was not the "normal" or "ordinary" case described in Dutton, but an extraordinary case where the directed verdict standard could not be applied. Aetna Life Casualty Insurance Co. v. Lavoie, 470 So.2d 1060 (Ala. 1984), judgment vacated, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823
(1986); Gulf Atlantic Life Insurance Co. v. Barnes,405 So.2d 916 (Ala. 1981). The Court in Kountz determined from the evidence presented at trial that the insurance company intentionally failed to determine that the real reason for the removal of Kountz's teeth was the injury as claimed, not the pre-existing chronic periodontal disease. That intentional failure to determine the existence of a valid reason for denying payment was sufficient to support an inference of the insurer's bad faith failure to pay. It was this inference of bad faith, not the denial of summary judgment on the breach of contract claim, that allowed the bad faith claim to be presented to the jury.
In Jones v. Alabama Farm Bureau Mutual Casualty Co.,507 So.2d 396 (Ala. 1986), the Court stated that "the plaintiff in a bad faith case may prove his case either by showing that the insurer refused to pay the claim, knowing there was no legitimate reason to refuse payment, or by showing that the insurer intentionally failed to investigate the claim to determine whether there was a legitimate reason for refusing payment." Id. at 399. The factual controversy in Jones
precluded a directed verdict on the contract claim (which is usually a prerequisite for submission of the bad faith claim to the jury). 419 So.2d 1357. The Court concluded that Jones was not the "normal" or "ordinary" case, because the sole basis for the initial denial of the insured's claim was the insured's alleged statement to the insurer's claims adjuster. The resolution of a factual issue surrounding the statement alone was determinative of the viability of the insured's bad faith claim. In addition, the Court concluded that the investigation by the insurer, which was conducted after the denial of the claim, could not serve as an arguable basis for denying the claim initially. " '[W]hether an insurance company is justified in denying a claim under a policy must be judged by what was before it at the time the decision was made." 507 So.2d at 400, quoting Dutton, supra, at 1362 (emphasis supplied inJones).
The present case falls within the "ordinary" or "normal" case described in Dutton, not the extraordinary cases 00.described in Kountz and Jones. There is no evidence of an intentional failure to determine the existence of a valid reason for denying payment; there is no factual issue concerning Kizziah's alleged statement to Golden Rule's claims adjuster; and the investigation by Golden Rule was conducted prior to denying the claim, not after the decision was made. The summary judgment on the bad faith claim is affirmed.
 Fraud
To establish a prima facie case of intentional or reckless fraud, Kizziah had to produce at least a scintilla of evidence tending to prove each element of fraud pursuant to Ala. Code 1975, § 6-5-101. Section 6-5-101, in pertinent part, reads as follows:
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, . . . constitute legal fraud."
The only representation by Golden Rule was the issuance of the policy and the payment of a small claim made by Kizziah. Whether there was a misrepresentation in *Page 948 
issuing the policy must be determined by looking to the information that was available to Golden Rule at the time of the application. In his deposition, Kizziah admitted that he was aware that any misstatements or erroneous information on his application could cause the policy to be voided or the claims to be refused. He also acknowledged his failure to provide records disclosing his past medical history to Golden Rule, either with regard to the original application or to the amendment to the application.
Furthermore, no evidence was presented to indicate a misrepresentation predicated upon Kizziah's having been told by anyone at Golden Rule that he would be covered for treatment involving the bruit or murmur.
After considering the depositions, affidavits, and other documents presented to the trial court, we conclude that Golden Rule made a prima facie showing that there was no fraud and that Kizziah failed to rebut that showing; summary judgment for Golden Rule on the fraud claim is, therefore, affirmed.
 Tort of Outrage
Kizziah argues that Golden Rule's denial of coverage and cancellation of the policy caused him severe emotional distress; and that Golden Rule's review of the medical information submitted with his first major claim was arbitrary and inadequate.
This Court in American Road Service Co. v. Inmon,394 So.2d 361 (Ala. 1980), recognized the intentional or reckless tort of outrageous conduct causing severe emotional distress, as proposed by the American Law Institute's Restatement (Second)of Torts § 46 (1948). In Inmon, Justice Beatty set forth the critical test with which to determine the tort of outrageous conduct:
 "[O]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress." Id. at 365.
Extreme conduct is conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Comment (d),Restatement, supra, § 46, at 73. The emotional distress must be so severe that no reasonable person could be expected to endure it; recovery must be reasonable and justified under the circumstances, liability ensuing only when the distress is extreme. Comment (j), Restatement, supra, § 46, at 77-78.
Prior case law involving claims based on the tort of outrage shows our adherence to the stringent Inmon standard and our limitation of the tort of outrage to the most reprehensible of situations. See, Cates v. Taylor, 428 So.2d 637 (Ala. 1983) (where the defendant prevented the burial of the plaintiffs' deceased father); National Security Fire Casualty Co. v.Bowen, 447 So.2d 133 (Ala. 1983) (where investigators for National Security threatened bodily injury to Bowen (who had made a claim for a fire-related loss with National Security) and his children, forced Bowen at gunpoint to drive to the woods, and pointed an unloaded gun at Bowen while continually pulling the trigger).
As Justice Jones concluded in Nabors v. St. Paul InsuranceCo., 489 So.2d 573 (Ala. 1986), the tort of outrage is "an action difficult of proof and one for which recovery may be had only upon meeting all the elements of the stringent standard announced in [Inmon]." Id. at 574.
In this case, we find no evidence from which reasonable people could conclude that the insurer (Golden Rule) intended to cause the insured (Kizziah) severe emotional stress.George v. Jordan Marsh Co., 359 Mass. 244, 268 N.E.2d 915, 46 A.L.R.3d 762, 767 (1971). Neither is there anything in the record before us from which we can conclude that Golden Rule's conduct in rescinding the policy and denying coverage was so "extreme in degree as to go beyond all possible bounds of decency," or was such as to be "regarded as atrocious and utterly intolerable in a civilized society." Comment (d),Restatement, supra, § 46, at 73. *Page 949 
Golden Rule had the right to investigate the major claim filed by Kizziah and to question those persons who had knowledge of his prior medical history. The policy contained language warning that "an incorrect application may cause your policy to be voided, or a claim to be reduced or denied." Kizziah admitted he was aware of this language on his original application and on the amendment verifying the information to the original application. Kizziah's failure to provide accurate and complete medical information upon applying for insurance was the reason Golden Rule cancelled the policy and denied coverage.
We therefore affirm the summary judgment for Golden Rule on Kizziah's outrage claim.
For the foregoing reasons, we hold that summary judgment was proper in favor of Golden Rule as to Kizziah's claims for bad faith, fraud, and outrageous conduct.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.
[1] A bruit or murmur is defined as a sound heard when blood rushes through a vein or artery.