The questions in these lawsuits are whether World Insurance Company ("World") improperly refused to pay claims submitted by the plaintiff, Dianne Burkett, for the cost of medical treatment for her daughter, Kathryn Burkett, and whether Willis Burkett, the agent who sold the plaintiff the policy, fraudulently misrepresented to her that she and Kathryn were fully insured, when Kathryn's coverage was subject to an exclusion for gastroenteritis.
These consolidated appeals arise from the denial of the defendants' motions for JNOV or, in the alternative, a new trial. Upon trial, the jury awarded Dianne Burkett $4,600 against World for breach of contract; $175,000 against World for bad faith refusal to pay a direct claim; and $50,000 against Willis Burkett for fraud. World moved for JNOV or, in the alternative, a new trial on the bad faith claim, arguing that the verdict was unsupported by the evidence, and on the breach of contract claim, arguing that the verdict was inconsistent with the fraud verdict against Willis Burkett. Willis Burkett moved for JNOV or, in the alternative, a new trial on the fraud verdict, arguing that it was inconsistent with the verdict against World on the breach of contract claim. The trial court denied both defendants' motions for JNOV or, in the alternative, a new trial and, from the denial of their motions, they appealed. We reverse and remand.
On March 15, 1983, Dianne Burkett applied for major medical insurance for herself and her daughter Kathryn at the office of Willis Burkett. Willis Burkett and his wife Shirley were independent insurance brokers who acted as soliciting agents for World, as well as for other companies. Their office was located next door to that of Dianne Burkett's employer, TranSouth Financial Corporation. The plaintiff is not closely related to Willis and Shirley Burkett, but the three were friends.
World issued the major medical policy for Dianne and Kathryn Burkett on May 19, 1983. The plaintiff claims that Willis and Shirley Burkett assured her that she and her daughter were fully covered, but that they never actually gave her the original policy. She testified that on several occasions she asked the Burketts about the medical policy, that they replied that the policy had not arrived, and that they told her not to worry because she and Kathryn were fully insured.
In January 1984, Kathryn became ill and was hospitalized twice. She was treated for vomiting, diarrhea, stomach pains, fever of undetermined origin, respiratory infection, bronchitis, urinary tract infection, headaches, tinea orporis, and duodenitis. Dianne Burkett presented Shirley Burkett with Kathryn's medical bills in late January or early February 1984 to be submitted to World. World received the claims and requested additional information from Dianne Burkett and Jackson Hospital.
On April 4, 1984, World wrote to Dianne Burkett, informing her that it was denying payment of the bills because they fell within the scope of an elimination endorsement on Kathryn. Dianne Burkett testified that, after she received the denial letter, she asked Willis and Shirley Burkett the meaning of the letter and the location of her original policy. The plaintiff contends that Shirley Burkett was unable to find the policy or to explain to her the reference to the elimination endorsement.
Dianne Burkett filled out a form request for a duplicate policy from World on April 20, 1984. The insurer sent the Burkett agency a duplicate of the policy on April 27, 1984, but the duplicate did not contain an elimination endorsement. Although the duplicate lacked the elimination endorsement, Shirley Burkett delivered the duplicate to the plaintiff. *Page 1217 
Shirley Burkett testified that, after the duplicate arrived without the elimination endorsement, she informed World that the endorsement had been left off. World then sent the Burkett agency a new policy specifications page with the elimination endorsement attached. Shirley Burkett delivered the new specifications page to the plaintiff in late May or early June 1984, and the plaintiff filed this action against World and Willis Burkett on April 3, 1985.
Dianne Burkett claims that World is guilty of breach of contract and bad faith refusal to pay a direct claim. She alleges that the insurer fabricated the exclusionary endorsement after she submitted the claims, and that World had no legitimate ground for refusing the claims when it made the decision not to pay.
World argues that the original policy contained an elimination endorsement to be in effect for one year that provided as follows:
 "By reason of prior history of (1) stomach disorder (2) enureses this policy is issued with the understanding that neither the holder of this policy nor the beneficiary shall be entitled to any benefits for loss caused or contributed by (1) disease of stomach, plyorus or duodenum (2) enureses as it pertains to Kathryn, dep. daughter, all of which the Insured agrees to by the acceptance of this policy."
World maintains that this elimination endorsement was part of the policy that it sent to the Burkett agency in May 1983. The insurer argues that the endorsement was attached to the original policy, although it was left off the duplicate that Dianne Burkett received in April 1984. World produced its underwriting documents at trial, which date to May 1983, before the policy was issued. The underwriting documents indicate that World intended to include an exclusionary endorsement as to gastroenteritis and enuresis for Kathryn. World also produced Equifax underwriting medical history reports dated March 31, 1983. These reports reveal that World was aware before it issued the policy that Kathryn had had prior episodes of gastroenteritis before her mother applied for health coverage in March 1983. According to the Equifax report, Kathryn's most recent treatment for gastroenteritis was 20 days before Dianne Burkett applied for the coverage.
World argues that its evidence demonstrates that the exclusionary endorsement for gastroenteritis was part of the contract and would preclude the granting of a directed verdict in favor of Dianne Burkett on her breach of contract claim. The insurer maintains that since the plaintiff was not entitled to a directed verdict on her breach of contract claim, then it was entitled to a directed verdict on the bad faith claim. We agree, for the reasons which follow, and therefore reverse the denial of World's motion for JNOV as to the bad faith claim.
In National Security Fire Casualty Co. v. Bowen,417 So.2d 179, 183 (Ala. 1982), we held:
 "[T]he plaintiff in a 'bad faith refusal' case has the burden of proving:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim. [Emphasis original.]
 "The 'debatable reason' under (c) above means an arguable reason, one *Page 1218 
that is open to dispute or question. Webster's Third New International Dictionary (1931) at 116. See Chavers [v. National Security, 405 So.2d 1] at 10 [Ala. 1981]; see also Embry, J., concurring on rehearing in Aspinwall v. Gowens, 405 So.2d 134
(Ala. 1981)."
We explained more thoroughly the requirement of proving a breach of contract in National Savings Life Ins. Co. v. Dutton,419 So.2d 1357, 1362 (Ala. 1982):
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury." (Emphasis added.)
The standard that the majority adopted in Dutton became known as the "directed verdict on the contract claim standard." In a special concurrence to Dutton, Justice Jones observed that in certain extraordinary cases a different standard would be applied:
 "I concur completely with the opinion and write separately to elaborate on one point. The opinion correctly prefaces the 'directed verdict on the contract claim' standard with the words "in the normal case'; and the phrase 'if the evidence produced . . . creates a fact issue . . .' is preceded by the word 'Ordinarily.' These are significant qualifications. Certainly, extreme cases will arise in which a fact issue will present a jury question on that claim. This is not the case before us; and, absent such circumstances, the 'directed verdict on the contract claim' is the applicable standard for testing the tort of bad faith claim."
419 So.2d at 1362-63. In this case, Dianne Burkett argues that her bad faith claim is extraordinary and that, even if she was not entitled to a directed verdict on the breach of contract claim, she nevertheless may bring her bad faith claim. Our analysis of recent bad faith cases that address the distinction between ordinary and extraordinary bad faith claims compels us to hold that Dianne Burkett's claim is of the ordinary type.
This Court has not yet formulated a general rule for deciding whether a claim is an ordinary or an extraordinary bad faith claim. The analysis appears to be made on a case by case basis, as to whether the evidence that the insurer raises to overcome the plaintiff's motion for directed verdict on the breach of contract claim should also preclude the plaintiff's bad faith claim. For example, in Jones v. Alabama Farm Bureau MutualCasualty Co., 507 So.2d 396 (Ala. 1987), the plaintiffs had a homeowner's policy that insured against damage caused directly by perils such as lightning, but not against damage caused indirectly, such as from a tree falling on the power line. During a storm the plaintiffs experienced problems with their electrical service, and several items of personal property were damaged. The plaintiffs and Alabama Farm Bureau Mutual Casualty Company ("Farm Bureau") disputed whether the damage was caused directly by a lightning strike or by a power surge when a tree limb fell on the power line. A Farm Bureau adjuster claimed that the plaintiff told him that the damage resulted when a tree limb fell on the power line. The adjuster's decision was based solely on what the plaintiff allegedly had told him.
Farm Bureau argued that the factual dispute as to what the plaintiff had told the adjuster in the conversation precluded a directed verdict in favor of the plaintiff in the breach of contract action, and therefore under Dutton entitled Farm Bureau to a summary judgment on the bad faith claim. However, we held:
 "The instant case is not the normal or ordinary case. As stated previously, the sole basis for the initial denial of Mrs. Jones's claim by Mr. Kratzer was Mr. Jones's alleged statement to Kratzer. It is the resolution of this factual issue, alone, that will determine the viability of Mrs. Jones's bad faith claim. *Page 1219 
". . . .
 "Although the plaintiff's burden of proof in a bad faith action is great, it should not be insurmountable. Precluding a plaintiff's bad faith action by application of the 'directed verdict on the contract claim' test when the disputed factual issue arises solely from a contradicted oral conversation between the insurer and the insured or a third person puts too onerous a burden on the plaintiff. Moreover, it would frustrate the purpose of the bad faith action by allowing an insurer simply to misrepresent the content of an oral conversation to avoid liability."
507 So.2d at 400-01. Although Dianne Burkett claims that her case is an extraordinary bad faith action, we find that the facts in Jones were much more compelling than are those in this case. World has produced substantial evidence that it had excluded Kathryn Burkett from coverage for treatment related to gastroenteritis from the day it issued the policy. In Jones, the insured's allegations of fact depended on an oral conversation that could be substantiated by no one. In this case, World presented Equifax reports and underwriting documents to support its allegation that it was aware of Kathryn's episodes of gastroenteritis and that it excluded the condition from coverage before it issued the policy. The Equifax reports revealed Kathryn's history of gastroenteritis to the underwriters a month and a half before World issued the policy. World also produced the underwriters' worksheets, which noted the gastroenteritis condition and indicated their intent to exclude coverage for gastroenteritis. In this case, the defendant's allegations of fact are well documented, while the plaintiff's allegation that the insurer fabricated the exclusion for gastroenteritis after she submitted the claims is unsubstantiated. We conclude that the extraordinary-claim exception to the normal bad faith rules does not apply to the facts in this case. Our holding today is consistent withKizziah v. Golden Rule Ins. Co., 536 So.2d 943 (Ala. 1988), this Court's latest pronouncement on the distinction between the ordinary or normal bad faith case and the extraordinary case. Since Dianne Burkett was not entitled to a directed verdict on the breach of contract claim, the trial court should have directed a verdict in favor of World on the bad faith claim.
World is entitled to JNOV on the bad faith claim also, because Dianne Burkett failed to produce any evidence of the third and fourth elements of bad faith set out inBowen, 417 So.2d at 183: "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);" and "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason." From World's omission of the endorsement from the duplicate policy it sent her, Dianne Burkett infers that the insurer created the exclusion after she submitted her claims. This theory alone does not establish that World knowingly refused to pay the claim with no legitimate or arguable reason for that refusal. Since there was no evidence that World knew that there was an absence of any legitimate or arguable reason for denying the claim when it refused payment, we hold that World was entitled to a JNOV on the bad faith claim.
World appeals the denial of its motion for JNOV as to the breach of contract verdict on the ground that that verdict is inconsistent with the fraud verdict against Willis Burkett. Also, Willis Burkett argues that he is entitled to a new trial because the fraud verdict is inconsistent with the breach of contract verdict against World. Both World and Willis Burkett point out that the trial court instructed the jury not to return inconsistent verdicts on the fraud and breach of contract claims. This instruction was proper under NationalSecurity Fire Casualty Co v. Vintson, 414 So.2d 49
(Ala. 1982). In Vintson, the insured sought to recover from the insurer on breach of contract and also on a misrepresentation that the policy was in effect immediately, when, in fact, it was not in effect until delivered. The loss occurred before the policy was delivered. We held: *Page 1220 
 "The plaintiff may then elect to submit either theory, or both, to the factfinder, ARCP 8(a), with the proper instructions by the court to the jury that it must determine whether one, or both, of these theories are supported by the evidence if at all. If the jury returns a verdict for the plaintiff, it may only award damages under one of the theories, not both. However, the choice rests with the jury. See, USFG v. McKinnon, 356 So.2d 600 (Ala. 1978)."
414 So.2d at 51. In the present case, the limiting instruction was necessary. It would be contradictory for the jury to find both that Dianne Burkett was entitled to full recovery on the insurance contract and that the agent committed fraud by representing that Kathryn was fully covered when in fact she was not. In other words, if the jury found that the agent was guilty of fraud, then it would be contradictory for the jury also to award Dianne Burkett full recovery on her breach of contract claim.
When the court instructed the jury not to return an inconsistent verdict on the fraud and breach of contract claims, the plaintiff did not object to that instruction. At that point, it became the law of the case. The jury, however, disregarded the instruction by awarding an inconsistent verdict, and both defendants moved for JNOV or, in the alternative, a new trial. We have held:
 "It is essential to orderly administration of the law that the jury obey the instructions the court gives it as the law, having application to the facts in evidence, or the reasonable inferences to be drawn therefrom; and a verdict rendered in disregard of such instructions, even though the instructions of the court be erroneous, is against the law of the case and, in a proper case, should be set aside. Penticost v. Massey, 202 Ala. 681, 81 So. 637, and cases there cited. The usual method of setting the verdict aside is by granting a motion for a new trial. Penticost v. Massey, supra; Fleming Hines v. Louisville N.R.R.Co., 148 Ala. 527, 41 So. 683; 18A Ala.Dig., Trial, Key No. 337."
Pettus v. Shafer, 386 Ala. 625, 628-29, 244 So.2d 573, 576
(1971). We therefore hold that the denial of the defendants' motions for new trial on the issues of breach of contract and fraud was error. The judgment must be, and it is hereby reversed. The denial of defendant World's motion for JNOV on the bad faith claim is also reversed, and the cause is remanded. It is so ordered.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
ALMON, J., not sitting.