The issue in this case is whether the trial court erred in entering summary judgment for National Foundation Life Insurance Company ("National") on the plaintiffs' claims for breach of contract, fraud, and bad faith.
This appeal involves a medical insurance policy. The evidence before the trial court tended to show the following: On March 24, 1983, the Kings applied to National for a policy of major medical health insurance through National's agent, Christopher R. Farrow. On the application, the Kings indicated that Geraldine King had received medical treatment for a prior pregnancy, but the Kings responded in the negative to a question about whether they had received any "other medical or surgical advice or treatment or operation." National issued a policy to the Kings, effective March 24, 1983. The policy provided as follows:
 "Subject to all provisions, waiting periods, exclusions, exceptions and limitations contained herein, the Company will pay the benefits provided hereunder for loss by reason of certain hospital confinement expenses or other specified expenses incurred by an Insured Person which commences while this policy is in force for such person and which is a result of Injury (see page 2 definitions) or Sickness (see page 2 definitions)."
On page 2 of the policy, sickness is defined as "illness or disease of any Insured which first manifests itself thirty (30) days after the Effective Date of Insurance and while the policy is in force."
In September 1983, Geraldine had surgery to remove some cysts on her breast and face. On September 30, 1983, National received a claims submission from Geraldine's treating physician; on the claim form, the doctor had answered "no" to the question whether the patient had ever had the same or similar symptoms. National also received other documents related to the claim, including a discharge summary prepared by Geraldine's treating physician on September 21, 1983. This document stated "HISTORY OF PRES ILLNESS: The patient is a 30 year old female with six month history of cystic masses of the left breast and left nipple. She also has had chronic problems with cystic lesions of the face." Based upon this information *Page 504 
indicating that the cysts had appeared before the end of the 30-day exclusion period of the policy, National denied coverage for this claim.
On January 9, 1984, Geraldine wrote National and told them that the cyst condition had not been a preexisting condition. National responded by stating that the claim was still denied, but National did invite Geraldine to submit additional information from her physician. The Kings denied receiving this letter. Apparently, this letter from National was incorrectly addressed and was not received by the Kings. The Kings and National had further communications, and in April 1984, Geraldine's physician sent National a letter stating that the breast cysts did not appear until July or August 1983. Based upon this letter, National decided to reopen the claim to review it further; National informed the Kings of this action in June 1984.
In addition to the treatment regarding the cysts, Geraldine was hospitalized in January 1984 for a miscarriage. The Kings filed a claim for this hospitalization, and National requested additional information, which arrived in April and May 1984. Before National could complete its review of the cyst and pregnancy claims, the Kings filed suit on both claims on June 20, 1984.
All benefits for both claims were paid by National in October 1984. The Kings introduced evidence of National's internal procedures and how National had not consistently followed these procedures in handling their claims. National introduced evidence that it had been in the process of moving its corporate headquarters from November 1983 until mid-1984 and that as a result of this move it had been required to hire an almost entirely new claims staff. National claimed that this change had created a backlog of claims and thus that those claims were not processed as quickly as they would have been under normal conditions.
 I
Because this suit was filed prior to June 11, 1987, the effective date of Ala. Code 1975, § 12-21-12, the "scintilla rule" applies to the trial judge's ruling on National's summary judgment motion. Under that rule, "If there is any evidence supporting the position of the party against whom the motion is made, summary judgment cannot be granted." Boswell v. Coker,519 So.2d 493, 495 (Ala. 1987).
The Kings allege that National committed the tort of bad faith refusal to pay an insurance claim. In National SecurityFire Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala. 1982), this Court held:
 "[T]he plaintiff in a 'bad faith refusal' case has the burden of proving:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." (Emphasis in original.)
This Court explained the breach of contract requirement inNational Savings Life Ins. Co. v. Dutton, 419 So.2d 1357, 1362
(Ala. 1982):
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a *Page 505 
matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury."
The question of when a case is not an "ordinary" one so that a bad faith claim can still be presented to a jury despite the plaintiff's not being entitled to a directed verdict on the breach of contract claim has been decided on a case by case basis. See Burkett v. Burkett, 542 So.2d 1215 (Ala. 1989);Jones v. Alabama Farm Bureau Mut. Cas. Co., 507 So.2d 396 (Ala. 1986). In this case, the disputed factual issue is not based solely upon an oral conversation, as it was in Jones, and we are of the opinion that this is an ordinary case as contemplated by our decision in Bowen.
"If any one of the reasons for denial of coverage is at least 'arguable,' this Court need not look any further."McLaughlin v. Alabama Farm Bureau Mut. Cas. Ins. Co.,437 So.2d 86, 91 (Ala. 1983). National did have an arguable reason for denying the cyst claim; the discharge summary clearly showed that the breast cyst had appeared just prior to or within the 30-day exclusion period after the effective date of the policy on March 24, 1983. National also asserts several other arguable reasons for denying the claim, such as the fact that Geraldine had had an extensive history of prior facial and breast cysts and pregnancy complications, but that she did not reveal any of this on the application. However, all the reasons National gives, other than the discharge summary, were not known to it and considered by it at the time it denied the cyst claim. The denial must be judged by what the insurer knew at the time the decision to deny was made; an insurer cannot backtrack and uncover additional reasons, no matter how legitimate, if it did not have knowledge of those reasons at the time of the denial.Jones, supra, 507 So.2d at 400. Nonetheless, the discharge summary did provide National with an arguable reason for denying the claim, and one reason is enough to defeat a claim for bad faith.
The Kings claim that once they made National aware that the discharge summary was incorrect, then National was under a duty to reopen the file and review its determination that it had a valid reason to deny the claim. National did, in fact, reopen the file to review the new material it had received; thus, the Kings cannot complain that National did not investigate the claim once it received evidence that the report it had based its denial on might have been incorrect.
As for the pregnancy claim, the Kings have failed to show a breach of the contract; they filed suit before National had made any decision on that claim. While National was slow in reviewing that claim, mere delay which is not unreasonable does not amount to a refusal to pay; an action for bad faith lies only where the insurer has acted with an intent to injure.Coleman v. Gulf Life Ins. Co., 514 So.2d 944, 946-47 (Ala. 1987). Therefore, the trial court was correct in ruling in National's favor on this issue.
 II
The Kings base their fraud claim upon the fact that National did not disclose to them the company's internal operating procedures for handling claims and for reopening claim denials based upon incorrect information. Section 6-5-102 provides:
 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
"Under § 6-5-102, mere silence is not fraud unless confidential relations or special circumstances exist; active concealment or misrepresentation must be present." Berkel Co. ContractorsInc. v. Providence Hosp., 454 So.2d 496, 505 (Ala. 1984). " 'There is no duty to disclose facts when information is notrequested, and mere silence does not constitute fraud in the absence of a confidential relationship.' " Keeler v. Chastang,472 So.2d 1031, 1032 (Ala. 1985) (quoting Ray v. Montgomery,399 So.2d 230, 232 (Ala. 1980)). (Emphasis in Keeler.) There was *Page 506 
no confidential relationship in this case that would have required National to disclose its internal operating procedures to the Kings, and there was no evidence that National actively concealed these procedures from the Kings. The trial court correctly granted National's motion for summary judgment on the fraud claim.
 III
The Kings also allege a claim for breach of contract. National has already paid the claims, despite the fact that it learned that the Kings concealed an extensive history of prior medical treatment when they applied for coverage. National was in the process of reexamining the cyst claim and was preparing to pay the pregnancy claim at the time the Kings filed suit. The Kings cite no authority in either of their briefs for their claim that the trial court erred in granting summary judgment to National on their breach of contract claim. Failure to cite authority can be held to be a failure to properly present an issue for appellate review. Eady v. Stewart Dredging Const.Co., 463 So.2d 156, 157 (Ala. 1985). We find no error in the trial court's ruling in favor of National on this issue.
For the above reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.