INGRAM, Presiding Judge.
This is an action in which damages were claimed for breach of contract of medical insurance issued by Blue Cross and Blue Shield of Alabama (Blue Cross) to Jack Griffis (insured) and the bad faith refusal by Blue Cross to pay a claim made under the policy. The trial court granted Blue Cross’s motion for a directed verdict on the bad faith claim. The contract claim was submitted to the jury, and a verdict was returned in favor of the insured for $968.86.
The insured appeals, contending that the trial court erred in granting Blue Cross’s motion for directed verdict on the bad faith claim. Blue Cross cross-appeals, contending that the trial court erred in allowing the contract claim to go to the jury.
The facts, in pertinent part, are as follows: In November 1986, the insured underwent a “Magnetic Resonance Imaging (MRI) Scan” for the purpose of staging the progression of cancer of the prostate. The test was prescribed by Dr. Thomas Moody and performed and interpreted by Dr. Robert Naftel, a duly qualified diagnostic radiologist. The insured then properly submitted the $849.00 claim to Blue Cross for payment for the cost of the MRI testing. However, Blue Cross denied coverage, *268 based on a portion of the policy in effect which excluded benefits for procedures which were “experimental” or “investigative.”
The exclusions provision of the policy is as follows:
“We will not provide benefits for the following, whether or not a Physician performs or prescribes them:
[[Image here]]
“12. Any treatment, procedure, facilities, drugs, drug usage, equipment, or supplies which are Experimental or Investigative.”
The “Definitions” section of the policy states that:
“12. ‘Experimental’ or ‘Investigative’ means any treatment, procedure, facility, equipment, drugs, drug usage, or supplies either (a) not recognized by us as having scientifically established medical value and being in accordance with generally accepted standards of medical practice or (b) not approved by a governmental agency from which approval is required.”
At the time that the MRI procedure was administered to the insured, Blue Cross did not recognize MRI of the prostate, under clause 12(a) of the “Definitions” section, as having scientifically established medical value and as being in accordance with generally accepted standards of medical practice. Blue Cross testified that there was not sufficient research published and medical literature showing that the MRI was safe, effective, and superior to existing technologies in examining prostate disease.
Blue Cross testified that, in determining which medical procedures are considered investigative and experimental, the Blue Cross medical department consults with a medical review committee consisting of six practicing physicians. In addition, Blue Cross stated that it reviews medical journals regarding new treatments and tests, consults with consultants who are experts in various medical fields, and also considers the recommendations of the National Blue Cross and Blue Shield Association. Blue Cross testified that, using these procedures, the medical department found that, in 1986, MRI of the prostate was neither safe nor effective and that it likewise was not the standard in the field. As a result, Blue Cross concluded that MRI of the prostate was still an experimental and investigative procedure in 1986.
Dr. Naftel stated that the purpose of the MRI performed on the insured was to discover whether there had been any local extension of the cancer into the fat around the prostate gland or any metastasis into the pelvic region or into the lymph nodes. He stated that the staging of the disease would, in turn, affect the course of treatment. Further, Dr. Naftel testified that, in November 1986, at the time the test was performed on the insured, it was his opinion that the MRI test used in evaluating the insured’s condition was the safest and most effective method of obtaining the information sought and was superior to other existing means by which the information or similar information could be obtained.
Dr. Moody testified that, with the results of the MRI testing, he was able to determine the necessary treatment and specifically determined that the insured would benefit from a radical prostatectomy. In fact, he testified that, with the results of that testing, it was determined that the insured was at a “potentially curable stage.” Additionally, Dr. Moody submitted a letter to Blue Cross stating that the test performed was consistent with “good medical care.” He stated in the letter that the MRI scan had become a “standard method to evaluate the prostate and pelvic lym-phnoid areas.”
APPEAL — BAD FAITH CLAIM
As noted above, the insured appeals, contending that the trial court erred in granting Blue Cross’s motion for directed verdict on the bad faith claim. He contends that Blue Cross’s classification of the MRI as experimental was arbitrary and tantamount to bad faith. Therefore, he argues that his bad faith claim should have been submitted to the jury.
In National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179, 183 (Ala. *269 1982), the supreme court set out the elements which the plaintiff is required to prove in an action for bad faith. They are as follows:
“(a) an insurance contract between the parties and a breach thereof by the defendant;
“(b) an intentional refusal to pay the insured’s claim;
“(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
“(d) the insurer’s actual knowledge of the absence of any legitimate or arguable reason;
“(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer’s intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.”
Further, our Supreme Court has held that, in the “normal case,” for a plaintiff to make a prima facie case of bad faith and be entitled to submit his bad faith claim to the jury, he must be entitled to a directed verdict on the underlying claim alleging breach of the insurance contract. Burkett v. Burkett, 542 So.2d 1215 (Ala.1989). In National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala.1982), the supreme court stated:
“Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.”
This standard is known as the “directed verdict on the contract claim standard.” However, there are exceptions to this standard, and in certain extraordinary cases, a different standard will be applied. Burkett, supra. There is no general rule for deciding whether a claim is an ordinary or an extraordinary bad faith claim. Rather, the analysis appears to be made on a case-by-case basis.
Here, the insured contends that this is an extraordinary case and that the “directed verdict on the contract claim standard” should not be applied. We agree.
In the instant case the trial court found that there was a factual question which prevented the insured from being entitled to a directed verdict on the contract claim. The jury was entitled to determine whether Blue Cross’s classification of the MRI as experimental or investigative was arbitrary. The jury was charged that Blue Cross is not permitted to make an arbitrary determination, i.e., one which is not supported by the fair, solid, and substantial cause.
After a review of the applicable case law, we find that it is this factual issue alone that would determine the viability of the insured’s bad faith claim. In other words, if the jury found that Blue Cross’s decision to classify the MRI as experimental or investigative was arbitrary, the jury should then be entitled to determine whether Blue Cross had done so in bad faith. Otherwise, Blue Cross, by the wording of its policy, could alleviate any possibility of having to answer in damages for its possible bad faith refusal to pay a claim.
Once Blue Cross undertakes the duty of subjectively deciding what is and what is not recognized by it as having “scientifically established medical value and being in accordance with generally accepted standards of medical practice,” then if that duty is exercised arbitrarily, it appears to this court that such action could in certain instances amount to bad faith.
Here, the jury found the decision of Blue Cross to be arbitrary; therefore, we find that the jury should have then been permitted to determine whether such arbitrary action was in bad faith.
In view of the above, we conclude that the extraordinary claim exception to the normal bad faith rules does apply to the facts in this case. Therefore, we find that the trial court erred in granting Blue Cross’s motion for directed verdict on the bad faith claim.
CROSS APPEAL — BREACH OF CONTRACT
As noted at the beginning of the opinion, Blue Cross contends that the trial *270 court erred in denying its motion for a directed verdict on the breach of contract claim. It contends that the insured did not produce substantial evidence that Blue Cross did not act in good faith and was arbitrary and capricious in denying the insured’s claim.
We find no merit in Blue Cross’s argument. We have reviewed the record and find that the insured produced substantial evidence to support its claim that Blue Cross’s actions were arbitrary. There was evidence that the MRI did have “scientifically established medical value” and was in accord with “generally accepted standards of medical practice.” Such testimony was provided by the radiologist, Dr. Naftel, and the insured’s treating physician, Dr. Moody. Therefore, we find no error by the trial court in submitting the contract claim to the jury.
As concerns the bad faith claim, this case is due to be reversed and remanded to the trial court with instructions to submit the bad faith claim to the jury. The judgment on the contract claim is due to be affirmed.
AFFIRMED IN PART AND REVERSED AND REMANDED IN PART WITH DIRECTIONS.
ROBERTSON, J., concurs.
RUSSELL, J., concurs in part and dissents in part.