George W. Underwood owned and operated Underwood Roofing and Contracting, Inc., an Alabama corporation. Underwood ran his business from his residence in Montgomery, Alabama. In 1988 Underwood contacted South Central Bell Telephone Company ("South Central Bell") to have his roofing company advertised in South Central Bell's business telephone directory (the "Yellow Pages") for the June 1989 issue.
Underwood spoke with Lynn Griffin, a Yellow Pages representative, and they agreed to meet in December 1988. Griffin was an employee of L.M. Berry Company ("L.M. Berry"), which sold advertisements and listings in the Yellow Pages.[1] *Page 172 
Griffin first met with George Underwood to discuss the requirements for having an advertisement in the Yellow Pages and to make a sketch of the layout of the proposed advertisement for the roofing company. Griffin told Underwood that, in order to have a listing in the Yellow Pages, he would have to have proof of incorporation, a business license, and a business telephone. At that time, Underwood was using his residential telephone for the roofing company.
On February 6, 1989, Griffin met with George Underwood's wife, May Underwood, to complete a Yellow Pages advertising order and to have her approve the layout for the advertisement. May Underwood signed the printing order, which also contained the terms and conditions of the Yellow Pages advertising agreement.[2] As of February 6, 1989, George Underwood was still using his residential telephone for the roofing company business. While Griffin was at the Underwood residence, he telephoned South Central Bell to arrange to have the roofing company's residential telephone converted to a business telephone. In her deposition, May Underwood stated that Griffin had her speak to a South Central Bell employee so that she could give the information required for the conversion. May testified that she told the South Central Bell employee that she would have to talk to George Underwood before agreeing to convert the telephone service from residential to business, and that she would have George call South Central Bell later. George Underwood did not contact South Central Bell about converting his telephone service until April 18, 1989.
The advertising order that May Underwood signed contained a small section labelled "close date" under which was written the date of March 17, 1989. Griffin testified in his deposition that he had explained to both George and May Underwood that the "close date" was the deadline by which everything must be completed in order to have the roofing company's advertisement printed in the Yellow Pages. The Underwoods, however, say that they were never informed that if they did not convert their residential telephone to a business telephone by the March 17, 1989, "close date" their advertisement would not be included in the June 1989 issue of the Yellow Pages.
When the Underwoods received their copy of the June 1989 issue of the Yellow Pages, they discovered that the roofing company's advertisement had been omitted. Griffin testified that the reason the roofing company advertisement was omitted from the Yellow Pages was that the Underwoods had not converted their residential telephone to a business telephone until April 18, 1989, over one month after the March 17, 1989, "close date."
On August 17, 1989, the Underwoods sued South Central Bell and L.M. Berry, alleging legal fraud, breach of contract, negligence and wantonness, and intentional interference with business relations.[3] On December 5, 1989, the trial court ordered that the complaint be amended to allege the fraud with particularity, and ordered that the Underwoods allege promissory fraud, i.e., that at the time South Central Bell and L.M. Berry promised to include the roofing company's advertisement in the June 1989 Yellow Pages, they had a present intent not to perform their promise. The Underwoods amended the roofing company's complaint to allege legal fraud with *Page 173 
particularity, but they did not amend the complaint to allege promissory fraud.
On September 6, 1990, South Central Bell and L.M. Berry moved for a summary judgment on all of the counts, supporting their motion by depositions, affidavits, and the pleadings in the case. On October 4, 1990, the trial court entered a summary judgment in favor of South Central Bell and L.M. Berry. In its order the trial court stated:
 "The defendants' motion for summary judgment is granted on all claims of Underwood because (1) the alleged fraud is promissory fraud and Underwood has failed to offer any evidence that the defendants intended to deceive or intended not to perform at the time the representations were made, (2) the defendants did not breach the contract: Underwood failed to perform a condition precedent that it obtain business service and this condition was clearly explained to Underwood's agents, George and May Underwood, (3) there was no duty owed to Underwood by the defendants which was breached; and (4) there is no evidence that the defendants intentionally interfered with any of Underwood's contractual or business relations."
The Underwoods appeal, arguing that the trial court erred in characterizing the fraud claim as promissory fraud and arguing that they presented substantial evidence to support the contract, negligence, and intentional interference with business relations claims. We affirm in part; reverse in part; and remand.
A summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of fact must be resolved against the moving party. Kizziah v.Golden Rule Insurance Co., 536 So.2d 943 (Ala. 1988).
Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the nonmoving party must rebut the moving party's prima facie showing by presenting evidence of a genuine issue of material fact. Rule 56, A.R.Civ.P.; Wimberly v. K-Mart, Inc., 522 So.2d 260, 261 (Ala. 1988).
Because this action was filed after June 11, 1987, Ala. Code 1975, § 12-21-12, mandates that the nonmovant meet his burden by offering "substantial evidence." Bass v. SouthTrust Bank ofBaldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Fla.,547 So.2d 870, 871 (Ala. 1999).
 I. Fraud
The Underwoods argue that the trial court erred in holding that the fraud alleged in this case was "promissory fraud." The Underwoods alleged that South Central Bell and L.M. Berry represented that the roofing company's advertisement would be included in the June 1989 issue of the Yellow Pages, but that in fact it was omitted from the publication. The Underwoods argue that their complaint states a fraud claim under Ala. Code 1975, § 6-5-101, which provides that statements of fact "made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
The elements of fraud are (1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation.McAlister v. Deatherage, 523 So.2d 387 (Ala. 1988). If the fraud is based upon a promise to perform some act in the future, the plaintiff must prove two additional elements: (1) the defendant's intention, at the time of the alleged misrepresentation, not to do the act promised, and (2) an intent to deceive. P S Business, Inc. v. South Central BellTelephone Co., 466 So.2d 928, 930 (Ala. 1985).
The Underwoods say that the trial court erred in holding that they must meet the *Page 174 
burden of proof imposed in a promissory fraud action. In P SBusiness, we held that a mere promise to print an advertisement in a future issue of the Yellow Pages was a promise to perform an act in the future and that, therefore, a plaintiff alleging fraud because of an omission must prove that South Central Bell had an intent to deceive at the time the alleged misrepresentation was made.
In P S Business the plaintiffs alleged that South Central Bell had represented that an additional listing, which P S Business had requested, would be added to its Yellow Pages advertisement for the coming year. The additional listing, however, was omitted because P S Business could not obtain permission to use an IBM trademark. South Central Bell had written P S Business, informing it that unless it obtained permission to use the IBM trademark, South Central Bell would have to omit that portion of P S Business's advertisement. This Court affirmed the summary judgment in favor of South Central Bell because the plaintiffs had merely alleged that South Central Bell had failed to print the listing in a future copy of the Yellow Pages.
However, in Morgan v. South Central Bell Telephone Co.,466 So.2d 107 (Ala. 1985), this Court sustained a jury verdict based on legal fraud for an omission of the plaintiff's advertisement from the Yellow Pages; the verdict was upheld under Ala. Code 1975, § 6-5-101, which addresses "legal fraud" and not promissory fraud. In Morgan the plaintiffs alleged that South Central Bell had failed to inform them that a written contract was needed in order for a listing to be included in the Yellow Pages, when in fact one was required, and that they were assured that they needed to take no further action in order to be properly listed. However, the plaintiffs' advertisement was omitted from the Yellow Pages for three years because they had not completed a contract for the Yellow Pages advertisement.
In this case, the record shows that the Underwoods presented substantial evidence of legal fraud. See, e.g.,Morgan, supra, at 113. George and May Underwood both alleged that they were not told about the March 17, 1989 deadline or that their application and the telephone conversion had to be completed by that date. In addition, George Underwood testified in his deposition that in March 1989, he telephoned South Central Bell and spoke with one of its employees. He stated that in that conversation he asked the South Central Bell employee whether his application was complete and whether the roofing company's advertisement would appear in the June 1989 issue of the Yellow Pages. George Underwood said that the employee assured him that his application was complete and that the roofing company's advertisement would appear in the Yellow Pages.
Viewing the facts in a light most favorable to the Underwoods, as we must do, we hold that, in this case,Morgan is controlling and that the Underwoods' evidence constitutes substantial evidence to support an action alleging legal fraud. Therefore, the trial court's judgment that the plaintiffs were required to prove promissory fraud due to be reversed.
We also note that in this case, as in Morgan, the plaintiffs have failed to allege facts that would support their claim for punitive damages. In actions alleging legal fraud, a false representation, even if made by mistake or innocently, is sufficient to prove a legal fraud and upon such proof, §6-5-101 entitles the plaintiff to compensatory damages.
Punitive damages, however, may not be recovered in such an action unless the fraud is gross, malicious, and oppressive, and is made with knowledge of its falseness, or is so recklessly made as to amount to the same thing, and is made with the purpose of injuring the plaintiff. Morgan, supra, at 113-14; Gulf Shores, LTD. v. Powrzanos, 442 So.2d 71 (Ala. 1983). In this case, George Underwood stated in his deposition that he believed that at the time Griffin took the order for the advertisement he intended that it be included in the Yellow Pages. Thus, the Underwoods presented no evidence that would support their claim for punitive damages on the fraud claim. *Page 175 
 II. Breach of Contract
The Underwoods argue that the trial court erred in entering the summary judgment as to the breach of contract claim. The trial court held that there had been no breach of contract because Underwood had not performed a condition precedent to the contract, i.e., that he had not converted his residential telephone to a business telephone within the time required by the contract.
Both George and May Underwood testified that they knew that the roofing company's telephone had to be converted from residential to business. However, they say that they were not told that the conversion had to be completed by March 17, 1989, in order for the advertisement to appear in the Yellow Pages. The advertising order that May Underwood signed contains a small section labeled "close date" and the date March 17, 1989, was written within the space provided. Nowhere on the advertising order does it state what the "close date" is or that if all of the conditions for the advertisement are not met by the "close date," then the requested advertisement will not be printed in the Yellow Pages.
Whether a contract is ambiguous is a question of law for the trial court to determine. Haddox v. First Alabama Bank ofMontgomery, 449 So.2d 1226 (Ala. 1984). It is the duty of the court to analyze and determine the meaning of a contract when its terms are clear and certain, but when the terms of the contract are doubtful of meaning or the language is ambiguous, precontract negotiations and the conduct of the parties may be looked to by the jury as an aid in interpreting the contract.C.F. Halstead Contractor, Inc. v. Dirt, Inc., 294 Ala. 644,320 So.2d 657 (1975).
In this case, the parties dispute the meaning of the term "close date." There is nothing in the advertising order that defines or states the significance of the term "close date." The Underwoods allege that they were never told that if they did not convert their telephone by the "close date," then their advertisement would not appear in the June 1989 issue of the Yellow Pages. Griffin, however, testified that he made it clear to both George and May Underwood that they had to convert their telephone by the "close date" because that date was the deadline for their advertisement to be included in the June 1989 issue of the Yellow Pages.
Thus, we find that the terms of the contract regarding the meaning of "close date" are not clear and certain and that there is a genuine issue of material fact regarding the term's meaning. Accordingly, we reverse the summary judgment insofar as it held in favor of South Central Bell and L.M. Berry on the breach of contract claim.
Although it is not necessary for our determination of this case, we note, in the interest of judicial economy, that the advertising order contained a clause entitled "Limitation of Liability." Under the terms of that clause, South Central Bell attempted to limit its liability in cases of error or omission to the amount of the advertising charges. In Morgan v. SouthCentral Bell Telephone Co., 466 So.2d 107, 116-18, we held that such a clause in a Yellow Pages contract was unenforceable as contrary to public policy. Likewise, the limitation of liability provision in this contract is also unenforceable.
 III. Negligence
The Underwoods alleged that South Central Bell and L.M. Berry were negligent in the preparation, publication, and distribution of the Yellow Pages by omitting the roofing company's advertisement. The trial court's summary judgment held for the defendants on the grounds that the defendants had breached no duty owed the Underwoods.
In Morgan, supra, we held that in some cases South Central Bell's omission of an advertisement in the Yellow Pages might amount to misfeasance, instead of nonfeasance, and, therefore, support an action in tort based on negligence. In Morgan we explained when a legal duty, sufficient to *Page 176 
support an action in negligence, would arise:
 "The rule which seems to have emerged from the decisions in the United States is that there will be liability in tort whenever misperformance involves a foreseeable, unreasonable risk of harm to the interest of the plaintiff or where there would be liability for performance without the contract. More simply stated, we must determine whether there is a legal duty sufficient to support an action for negligence. For that determination, three primary considerations are important: (1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened.
 "The relationship between the plaintiffs and defendants was primarily a contractual one. However, under the circumstances of the contract entered into — where plaintiffs were clearly dependent on the Yellow Pages as their only form of advertisement, defendants were aware of that dependency, and, though undertaking to perform the contract, did so in such a negligent and [slipshod] manner that plaintiff Morgan's name was omitted from the Yellow pages four times in succession — there is clearly tort liability. Furthermore, the type injury and harm threatened, and finally, actually incurred, was such that the imposition of tort liability is here appropriate."
466 So.2d at 114 (citations omitted).
This Court has frequently observed that summary judgment is seldom appropriate in negligence cases. Wimberly v. K-Mart,Inc., 522 So.2d 260 (Ala. 1988); Searight v. Cummings TruckingCo., 439 So.2d 81 (Ala. 1983); Allen v. Mobile Infirmary,413 So.2d 1051 (Ala. 1982). "A party is not required to prove his entire case to defeat a motion for summary judgment. He is only required to demonstrate that a factual dispute exists that requires resolution by the jury." Wimberly, supra, at 261. Viewing the evidence in a light most favorable to the Underwoods, as we must, Kizziah, supra, we hold that the Underwoods presented substantial evidence that South Central Bell and L.M. Berry had a duty to print the roofing company's advertisement in the Yellow Pages and that they breached that duty.
In its brief, South Central Bell recognizes that as a part of its service to the public, it is responsible for furnishing a telephone directory to its subscribers. The record shows that the roofing company was a new business, and the Underwoods said that they were relying on the Yellow Pages as a main source of advertising. Indeed, South Central Bell promotes the Yellow Pages as a unique form of "directional medium" advertising. South Central Bell indicates that "directional medium" advertising serves as an informational guide to consumers in need of a service that is unlike creative advertising, which induces a perceived need in the mind of the user for a particular product or service.
George and May Underwood testified that Griffin failed to explain to them that they were required to convert their telephone service by the "close date." George Underwood testified that he telephoned South Central Bell before the June 1989 Yellow Pages directory was published and was assured that everything was in order and that the roofing company's advertisement would be published. Mr. Underwood also said that he telephoned South Central Bell about having his telephone service converted and that he was assured that South Central Bell would take care of the matter. Nonetheless, the roofing company's advertisement was omitted from the June 1989 issue of the Yellow Pages.
Viewing these facts in a light most favorable to the Underwoods, Kizziah, supra, we hold that there is a genuine issue of material fact as to whether the actions of South Central Bell and L.M. Berry were sufficient to create a duty, the breach of which would support a finding of tort liability in negligence. Accordingly, the summary judgment is reversed insofar as it held in favor of South Central Bell and L.M. Berry on the negligence claim.
 IV. Intentional Interference with Business Relations
The Underwoods argue that they presented substantial evidence to support their claim against South Central Bell and *Page 177 
L.M. Berry based on an alleged intentional interference with contractual or business relations. In Gross v. Lowder RealtyBetter Homes Gardens, 494 So.2d 590 (Ala. 1986), this Court stated the elements of a prima facie case of intentional interference with contractual or business relations:
 "[The] tort of intentional interference with business or contractual relations, to be actionable, requires:
 "(1) The existence of a contract or business relation;
 "(2) Defendant's knowledge of the contract or business relation;
 "(3) Intentional interference by the defendant
with the contract or business relation;
 "(4) Absence of justification for the defendant's interference,[4] and
 "(5) Damage to the plaintiff as a result of the defendant's interference."
494 So.2d at 597 (emphasis added).
Our review of the record in this case shows that the Underwoods failed to rebut the defendants' prima facie showing as to this issue by presenting evidence that South Central Bell or L.M. Berry intentionally omitted the roofing company's advertisement from the June 1989 issue of the Yellow Pages. To the contrary, the Underwoods testified in their depositions that they believed that Griffin had intended for their advertisement to appear in the Yellow Pages. Therefore, we affirm the trial court's judgment insofar as it held for to South Central Bell and L.M. Berry on the claim of intentional interference with business or contractual relations.
This cause is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] In its brief, South Central Bell states that South Central Bell, BellSouth Advertising Publishing Corporation ("BAPCO"), and L.M. Berry are corporations owned directly or indirectly by a parent corporation, BellSouth Corporation. South Central Bell says that as part of its service to the public it is responsible for periodically furnishing subscribers a telephone directory, which includes an alphabetical listing of its residential customers (the "White Pages") and a business directory that contains an alphabetical listing of business subscribers as well as advertisements (the "Yellow Pages"). South Central Bell states that it licenses BAPCO to publish and deliver the White Pages and the Yellow Pages. BAPCO contracted with L.M. Berry to sell advertising and listings for the Yellow Pages. Underwood does not dispute these facts.
[2] George Underwood stated in his deposition that May Underwood was not an officer of the roofing company, but that she signed the advertising order as his agent. There is no dispute regarding May Underwood's authority to sign the advertising order on behalf of the roofing company.
[3] The Underwoods sued as individuals and on behalf of Underwood Roofing and Contracting, Inc. The trial court dismissed the Underwoods' individual claims on the grounds that the injury, if any, was done to the corporation. The Underwoods have not argued the dismissal of their individual claims; thus any issue regarding those claims is waived. Bogle v. Scheer,512 So.2d 1336 (Ala. 1987). Although only the claims of Underwood Roofing and Construction, Inc., remain, for the purposes of this opinion we will refer to George and May Underwood in regard to action taken on behalf of the corporation.
[4] This Court has recently recognized that the "element" of justification is in fact an affirmative defense that must be pleaded and proved by the defendant. Century 21 Academy Realty,Inc. v. Breland, 571 So.2d 296 (Ala. 1990).