MONTGOMERY RUBBER AND GASKET COMPANY, INC., Plaintiff,

v.

BELMONT MACHINERY COMPANY, INC., and Brent Woody, d/b/a Woody Machinery Company, Defendants.

Civil Action No. 03–T–147–N.

United States District Court, M.D. Alabama, Northern Division.

Feb. 17, 2004.

D. Mitchell Henry, William H. Webster, Thomas A. Treadwell, Webster Henry & Lyons PC, Montgomery, AL, for plaintiff.

Norman Gunter Guy, Jr., Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, Jerrold M. Facktor, Facktor & Associates, Ltd., Chicago, IL, John T. Alley, Jr., Birmingham, AL, for defendants/cross-claimant/cross-defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Montgomery Rubber and Gasket Company, Inc. brought this lawsuit against defendants Belmont Machinery Company, Inc. and Brent Woody, d/b/a Woody Machinery Company, claiming that, in selling a "Berthiez Vertical Boring Mill" to Montgomery Rubber, Belmont Machinery and Woody represented that the mill would be in working condition, but that when it was delivered it was inoperable. Montgomery Rubber asserts a number of

state-law claims: (1) misrepresentation of material fact; (2) suppression of material fact; (3) deceit; (4) breach of contract; (5) breach of implied warranty of merchantability; (6) breach of implied warranty of fitness for particular use; and (7) breach of express warranty. Belmont Machinery and Woody removed this lawsuit from state to federal court based on diversity-of-citizenship jurisdiction. 28 U.S.C.A. §§ 1332, 1441.

Now before the court are Belmont Machinery's and Woody's motions for summary judgment. Belmont Machinery's will be granted in part and denied in part, and Woody's will be granted in whole.

## I. SUMMARY–JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." This standard can be met, in a case in which the ultimate burden of persuasion at trial rests on the nonmoving party, either by submitting affirmative evidence negating an essential element of the nonmoving party's claim or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his claim. The moving party may make this showing by deposing the nonmoving party's witness, by establishing the inadequacy of the documentary evidence or, if there is no evidence, by reviewing for the court the facts that exist to show why they do not support a judgment for the nonmoving party. The movant need not present affidavits or new evidence to meet this initial burden, but may premise the summary-judgment motion on an attack on the nonmoving party's evidence; once that is done, the burden shifts to the nonmoving party to call evidence to the attention of the court to dispute that contention. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); C. Wright, A. Miller & M. Kane, 10A Federal Practice and Procedure 3d. § 2727. Moreover, a district court must consider "all the evidence in the light most favorable to the nonmoving party ... and resolve all reasonably doubts in favor of the non-moving party." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1999).

## II. FACTUAL BACKGROUND

Ed Shaneyfelt, general manager of Gunter Park Machine and Hydraulics, a division of Montgomery Rubber, traveled to Schaumburg, Illinois, to meet with John Brandli, a salesperson for Belmont Machinery. Belmont Machinery sells used machines. The Illinois meeting was for the purpose of purchasing a lathe (which was purchased), but during the meeting, Shaneyfelt also saw a boring mill that he was interested in, although, according to Shaneyfelt, the mill was not discussed during the visit.

It appears that the purchase of the boring mill was negotiated by telephone. Brandli offered the machine for $ 29,500 and Montgomery Rubber counter-offered $ 25,000. Brandli agreed to the price on the condition that Montgomery Rubber would forgo an inspection and "test run" of the mill. Apparently, the boring mill was partially disassembled and would have taken some work to make fully operable before shipment. However, according to Shaneyfelt, Brandli assured him that, "with or without having someone come in to assemble and wire the machine for a test run, the Berthiez [boring mill] was fully operable and would run once delivered to Alabama."[1] Shaneyfelt agreed to these terms. The offer was memorialized in a proposal, signed by Brandli and faxed to Shaneyfelt.

---

1. Montgomery Rubber's response and memorandum brief in opposition to Belmont Machinery's motion for summary judgment, filed October 14, 2003 (Doc. 19), exhibit 1–A.

According to Montgomery Rubber, payment was made to Woody, Belmont Machinery's "supplier," at Belmont Machinery's request. Belmont Machinery claims that it was actually Woody who made the purchase, and it submits an invoice showing that the same lathe and mill were sold to Woody on November 21, 2001 and shipped "per [Woody's] instructions." The total price on the invoice is $ 60,000: $ 35,000 for the lathe, and $ 25,000 for the mill. Shipping does not appear to be included, and the invoice is marked as "collect," not paid.[2]

Belmont Machinery also submits an invoice from Woody to Montgomery Rubber, for the lathe and boring mill, dated November 20, 2001, as well as a check from Montgomery Rubber to Woody for the full price on the invoice, also dated November 20. The total price paid by Montgomery Rubber to Woody was $ 71,250. According to the invoice from Woody to Montgomery Rubber, the company paid Woody $ 42,500 for the lathe, $ 25,000 for the boring mill, and $ 3,750 for shipping. However, the notation on the check from Montgomery Rubber to Woody (which was endorsed by Woody) states that $ 44,000 was paid for the lathe, $ 25,000 for the mill, and $ 2,250 for shipping. The price-markup between Woody and Montgomery Rubber for the lathe is not explained, but this may be Woody's fee for his services.

Montgomery Rubber has also submitted a bill of lading, showing that both the mill and the lathe were shipped to it on November 29, 2001, and were received by Shaneyfelt on December 3, 2001.

Montgomery Rubber could not make the boring mill operable after receiving it. The company says that it worked on the mill "unsuccessfully for some time,"[3] but does not say how long it was until it contacted either Belmont Machinery or Woody. According to Belmont Machinery, after approximately 90 days, Montgomery Rubber contacted Brandli to complain that it could not make the machine run. However, Shaneyfelt, in his affidavit, "categorically den[ies] ... Brandli's statement that he had no communication with myself or anyone else at [Montgomery Rubber] until approximately 90 days after Montgomery Rubber's purchase of the Berthiez."[4] Brandli allegedly gave Montgomery Rubber some names of mechanics who could assist it. However, according to Montgomery Rubber, it has discovered that the mill has numerous mechanical and environmental issues and would be too expensive to fix.

## III. DISCUSSION

Montgomery Rubber states many causes of action against both Belmont Machinery and Woody. Montgomery Rubber asserts the following claims against Belmont Machinery and Woody: (1) misrepresentation of material fact, 1975 Ala.Code §§ 6–5–100 and 6–5–101; (2) suppression of material fact, § 6–5–102; (3) deceit, §§ 6–5–103, 6–5–104; (4) breach of contract; (5) breach of implied warranty of merchantability, § 7–2–314; (6) breach of implied warranty of fitness for particular use, § 7–2–315; and (7) breach of express warranty, § 7–2–313.[5]

---

2. Belmont Machinery's response and memorandum brief in opposition to Woody's motion for summary judgment, filed January 15, 2004 (Doc. no. 30), exhibit A.

3. Montgomery Rubber's response and memorandum brief in opposition to Belmont Machinery's motion for summary judgment filed October 14, 2003 (Doc. 19), exhibit 1 (affidavit of Ed Shaneyfelt).

4. *Id.*

5. While Montgomery Rubber asserts seven separate claims, it lists 11 or so counts in its complaint. Some of the counts are, however, redundant.

· The three parties disagree on their relationships to each other. Montgomery Rubber alleges that Woody was acting as Belmont Machinery's agent, and therefore is also liable to Montgomery Rubber. Woody filed a cross-claim against Belmont Machinery, claiming that he was acting as Montgomery Rubber's agent, and therefore if he is found liable to Montgomery Rubber, Belmont Machinery is liable to him.[6] Belmont Machinery claims that Woody was neither its nor Montgomery Rubber's agent, but rather an independent party, to whom Belmont Machinery sold the boring mill, and therefore there is no privity of contract between Belmont Machinery and Montgomery Rubber.[7] For purposes of summary judgment, this court will assume that, as Montgomery Rubber alleges, Woody was acting as Belmont Machinery's agent.

### A. Tort Claims

#### (1) *Misrepresentation of Material Fact*

■ Montgomery Rubber's first claim is for misrepresentation of material fact. Alabama law defines legal fraud as follows: "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." 1975 Ala. Code § 6–5–101. The elements of a fraudulent misrepresentation claim are: (1) a false representation, (2) of a material fact, (3) that is reasonably relied upon, and (4) damage that is proximately caused by the representation. *Epps Aircraft, Inc. v. Exxon Corp.*, 859 F.Supp. 533, 537 (M.D.Ala.1993) (Thompson, J.), *aff'd*, 30 F.3d 1499 (11th Cir.1994) (table); *Fore-*

*most Insurance Company v. Parham*, 693 So.2d 409, 421 (Ala.1997).

Montgomery Rubber asserts separate claims of "negligent misrepresentation," "reckless misrepresentation," and "intentional misrepresentation." According to Alabama law, these three causes of action are not separate; rather, they are degrees of the same tort. That is, the only difference among the claims is that, if a defendant makes the representation with knowledge that it was false or is reckless as to the statement's veracity, punitive damages are allowed. "In actions alleging legal fraud, a false representation, even if made by mistake or innocently, is sufficient to prove a legal fraud and upon such proof, § 6–5–101 entitles the plaintiff to *compensatory damages*. Punitive damages, however, may not be recovered in such an action unless the fraud is gross, malicious, and oppressive, and is made with knowledge of its falseness, or is so recklessly made as to amount to the same thing, and is made with the purpose of injuring the plaintiff." *Underwood v. South Cent. Bell Telephone Co.*, 590 So.2d 170, 174 (Ala. 1991) (emphasis in original). For Montgomery Rubber to collect punitive damages, therefore, it would need to show that the misrepresentation was either purposeful or reckless.

#### (a) *Claim against Belmont Machinery*

In its defense, Belmont Machinery contends that it made no representations to Montgomery Rubber at all, and, in addition, that the terms of the sale, irrespective of to whom it was made, state that the boring mill was sold "as is," with a 30–day return policy.

---

6. Woody's answer and cross claim, filed August 6, 2003 (Doc. no. 13).

7. Belmont Machinery's response and memorandum brief in opposition to Woody's mo-

tion for summary judgment, filed January 15, 2004 (Doc. no. 30); Belmont Machinery's motion for summary judgment, filed September 22, 2003 (Doc. no. 14).

██ Construing the facts in the light most favorable to Montgomery Rubber, the record raises issues of material fact regarding this claim, so as to survive a summary-judgment motion. Although there is evidence that the sale was in fact made to Woody and not to Montgomery Rubber, Montgomery Rubber has submitted evidence that it negotiated directly with Belmont Machinery at some point (through Brandli), and that the boring mill was shipped directly to Montgomery Rubber. Montgomery Rubber contends that Belmont Machinery assured it that the mill would be in working condition once assembled, and submits Shaneyfelt's affidavit to support this. Therefore, Montgomery Rubber has submitted sufficient evidence to allow a reasonable jury to conclude that a false representation concerning an existing material fact, which Belmont Machinery either knew was false when made or Belmont Machinery made recklessly and without regard to its truth or falsity, was made, and that Montgomery Rubber relied on the representation.[8] Therefore, a factual issue regarding exactly what, if anything, Belmont Machinery represented to Montgomery Rubber during the negotiations remains. This factual dispute is for a jury to decide. Belmont Machinery's summary-judgment motion will be denied on the misrepresentation-of-material-fact claim.

### (b) Claim against Woody

██ Montgomery Rubber claims that Woody was acting as Belmont Machinery's agent, and therefore sues Woody, as well, for the misrepresentation. Construing the facts in the light most favorable to Montgomery Rubber, and therefore assuming for purposes of this motion that Woody is Belmont Machinery's agent, Montgomery Rubber cannot maintain a claim against Woody for fraudulent representation. Montgomery Rubber has not alleged that Woody made any representations whatsoever to Montgomery Rubber. There is no allegation that Woody had any knowledge of the condition of the equipment or made any statements to Montgomery Rubber regarding the boring mill. Shaneyfelt's affidavit states that all negotiations took place between himself and Brandli, who was employed by Belmont Machinery.[9] Brandli's affidavit corroborates this.[10]

At most, Montgomery Rubber alleges that Woody was an innocent conduit through which Belmont Machinery defrauded Montgomery Rubber. As Woody correctly notes, forwarded information that is incorrect cannot form the basis of liability unless the information was relayed in bad faith. *Fisher v. Comer Plantation, Inc.*, 772 So.2d 455, 463 (Ala.2000). Therefore, even if Montgomery Rubber is alleging that Woody relayed false information, Montgomery Rubber would also have to show that Woody did so in bad faith. Because there is nothing in the record to support an allegation that Woody relayed *any* information to Montgomery Rubber, his summary-judgment motion will be granted on the misrepresentation-of-material-fact claim.

### (2) Suppression of Material Fact

Montgomery Rubber's second claim is premised on 1975 Alabama Code § 6–5–

---

8. Belmont Machinery does not appear to contest that it was unreasonable for Montgomery Rubber to rely on representations, nor does it contend that Montgomery Rubber was not damaged.

9. Montgomery Rubber's response and memorandum brief in opposition to Belmont Ma-

chinery's motion for summary judgment, filed October 14, 2003 (Doc. no. 19), exhibit 1.

10. Belmont Machinery's motion for summary judgment, filed September 22, 2003 (Doc. no. 14), exhibit B.

102, which states: "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Hence, while all parties are obligated not to make fraudulent representations, this statute also creates a duty to disclose information where there is a special relationship between the parties. "[A] duty to disclose 'depends upon the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances.'" *Barton v. American Red Cross*, 829 F.Supp. 1290, 1307–08 (M.D.Ala.1993) (Thompson, J.) (quoting *RNH, Inc. v. Beatty*, 571 So.2d 1039, 1042 (Ala.1990)), *aff'd*, 43 F.3d 678 (11th Cir.1994) (table), *cert. denied*, 516 U.S. 822, 116 S.Ct. 84, 133 L.Ed.2d 41 (1995)

■ It is unclear why Montgomery Rubber would think either Belmont Machinery or Woody had a special duty to disclose information to it; there is no special relationship between Montgomery Rubber and these parties. The evidence is that the sale was an arms-length transaction, since it is clear the contract was negotiated, and it appears that Shaneyfelt has some knowledge of used machines. Montgomery Rubber has not presented evidence of, nor even alleged, any special circumstance that would give rise to a duty to disclose. Therefore, both Woody's and Belmont Machinery's summary-judgment motions will be granted on the suppression-of-a-material-fact claim.

### (3) *Deceit*

This claim is extremely similar to the "misrepresentation of material fact" claim, except that "[a]n action for deceit, under [1975 Ala.Code] § 6–5–103 and § 6–5–104, results from either a willful or reckless misrepresentation or a suppression of ma-

terial facts with an intent to mislead," *Whitlow v. Bruno's Inc.*, 567 So.2d 1235, 1241 (Ala.1990), while an action for misrepresentation of material fact can be based on an unintentional misrepresentation. 1975 Ala.Code § 6–5–101.

Under § 6–5–104, deceit is defined as follows: "(1) The suggestion as a fact of that which is not true by one who does not believe it to be true; (2) The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true; (3) The suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or (4) A promise made without any intention of performing it." Therefore, an intent to deceive is required for this claim.

### (a) *Claim against Belmont Machinery*

■ Belmont Machinery's summary-judgment motion on Montgomery Rubber's deceit claim will be denied for the same reasons its summary-judgment motion on the fraudulent-misrepresentation claim will be denied; there is a genuine issue of material fact regarding what representations, if any, Belmont Machinery made to Montgomery Rubber. If, as Montgomery Rubber contends, Brandli told Shaneyfelt that "the Berthiez [boring mill] was fully operable and would run once delivered to Alabama," and Brandli knew this was not true or had no reason to believe that it was true, but still intended Shaneyfelt to rely on his guarantee, then Montgomery Rubber may recover compensatory and punitive damages against Belmont Machinery. *Ford Motor Company v. Sperau*, 708 So.2d 111, 116 n. 1 (Ala. 1997) ("Deceit is an intentional tort that, when proved to the satisfaction of the finder of fact, will support an award of punitive damages."). Because Montgomery Rubber has submitted evidence, in the form of

Shaneyfelt's affidavit, that Belmont Machinery made this representation to it, it is for the jury to decide if Montgomery Rubber's claim is credible, and whether any statements Belmont Machinery made to Montgomery Rubber were made with the intent to deceive.

### (b) *Claim against Woody*

Montgomery Rubber has not pointed to any statements made by Woody that could reasonably be interpreted to have been intended to deceive it. In fact, Montgomery Rubber has not submitted any evidence, nor even alleged, that Woody made *any* statement to it regarding the condition of the boring mill. Absent any representations made by Woody, he cannot be held liable for deceit. Therefore, Woody's summary-judgment motion will be granted on the deceit claim.

### B. *Contractual Claims*

Montgomery Rubber asserts four claims against Belmont Machinery and Woody regarding the purported contract between Montgomery Rubber and Belmont Machinery: (1) breach of contract; (2) breach of implied warranty of merchantability; (3) breach of warranty of fitness for particular use; and (4) breach of express warranty.

### (1) *Breach of Contract*

As with any contract claim, the court's first step must be to determine if a contract exists, and if so, what terms and conditions are included in that contract. Article 2 of the Alabama Commercial Code (Sales) governs the sale of goods. 1975 Ala.Code § 7–2–101. This case, however, is complicated by the fact that the agreement at issue consists of a series of oral communications as well as written proposals and invoices.

### (a) *Claim against Belmont Machinery*

The facts relating to the offer and acceptance of the contract, construed in the light most favorable to Montgomery Rubber, show that Brandli made an offer to sell the boring mill to Montgomery Rubber for $ 29,500, if Montgomery Rubber wanted the machine to be wired before shipment and to see the machine run. Montgomery Rubber counter-offered $ 25,000 and agreed to forgo the inspection and to wire the boring mill itself or find someone to do it. Brandli faxed a proposal to Montgomery Rubber that basically repeated Montgomery Rubber's suggested terms, and Montgomery Rubber accepted by tendering payment to Woody, allegedly at Belmont Machinery's request.[11]

Belmont Machinery contends that no contract existed and there was no privity between the parties. However, it fails to explain away the negotiations with Montgomery Rubber, the proposal it sent to Montgomery Rubber, the fact that Montgomery Rubber obtained the boring mill which was the subject of these negotiations, and the fact that, although Montgomery Rubber paid Woody, Belmont Machinery obtained the proceeds from the sale. Montgomery Rubber has clearly submitted sufficient evidence for a reasonable jury to conclude that a contract existed. *See* 1975 Ala.Code § 7–2–204 ("A contract for sale of goods may be made in any manner sufficient to show agreement, in-

---

**11.** While, because Belmont Machinery's facsimile transmission to Shaneyfelt contained essentially the same terms that Shaneyfelt alleged he proposed to Belmont Machinery, it could be construed as an acceptance, the content of the facsimile demonstrates that it was intended to be a counteroffer, not an acceptance. The document is entitled "proposal," refers to the terms as a "quote," and states that the machine "is offered subject to prior sale." Montgomery Rubber's response and memorandum brief in opposition to Belmont Machinery's motion for summary judgment filed October 14, 2003 (Doc. 19), exhibit 1–A (proposal).

cluding conduct by both parties which recognizes the existence of such a contract.").

■ Belmont Machinery also contends that Montgomery Rubber accepted the goods; it argues that Montgomery Rubber did not contact it for over 90 days after delivery of the machine. However, Montgomery Rubber contests this and states that it contacted Belmont Machinery earlier (although Montgomery Rubber does not specify how much earlier). Furthermore, rejection must take place only after the buyer has had a "reasonable opportunity to inspect the goods." 1975 Ala.Code § 7–2–606. "A cursory reading of this section reveals that the issue whether the buyer has accepted the goods is *fact specific.* Such matters fall squarely within the province of the jury." *Leisure American Resorts, Inc. v. Carbine Const. Co., Inc.,* 577 So.2d 409, 412 (Ala.1990) (emphasis in original). Because the boring mill required complicated assembly and new wiring, 90 days may have been required to give Montgomery Rubber a reasonable time to inspect it. Therefore, even if Montgomery Rubber did not reject the goods for some time, it has still submitted sufficient evidence to allow the question of whether it accepted or rejected the boring mill to go to the jury.

Belmont Machinery's summary-judgment motion will be denied on the breach-of-contract claim.

### (b) *Claim against Woody*

■ Assuming, for the purposes of Belmont Machinery's motion for summary judgment, that Woody was acting as Belmont Machinery's agent, as Montgomery Rubber alleges, Montgomery Rubber's claim against Woody must be dismissed. The general rule of law is that an agent, acting within his or her authority, who enters a contract on behalf of a disclosed principal, binds only the principal, and not himself or herself. *Lee v. YES of Russellville, Inc.,* 784 So.2d 1022, 1027 (Ala.2000).

Even if Woody was Belmont Machinery's agent, Montgomery Rubber does not contend that Woody was acting outside of his authority, nor does Montgomery Rubber contend that Woody's alleged status as an agent for Belmont Machinery was undisclosed. Therefore, Woody cannot be held liable for the contract made for the benefit of Belmont Machinery, and therefore Woody's motion for summary judgment against Montgomery Rubber will be granted.

### (2) *Breach of Implied Warranty of Merchantability*

Alabama has a statutorily implied warranty of merchantability, which states: "(1) Unless excluded or modified (Section 7–2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.... Goods to be merchantable must be at least such as ... [a]re fit for the ordinary purposes for which such goods are used." 1975 Ala.Code § 7–2–314.

Comment 3 explains that used goods, such as the boring mill in question, are still covered by an implied warranty: "A specific designation of goods by the buyer does not exclude the seller's obligation that they be fit for the general purposes appropriate to such goods. A contract for the sale of *second-hand goods,* however, involves only such obligation as is appropriate to such goods for that is their contract description." 1975 Ala.Code § 7–2–314 (emphasis added). Although some case law states that there is simply no warranty for a used vehicles, *see, e.g., Osborn v. Custom Truck Sales & Service,* 562 So.2d 243 (Ala.1990), the commentary above suggests that there should not be a blanket rule regarding used machines. As explained by a Florida court, "The standard that must be met for used goods to meet

the requirement of merchantability is necessarily different from that required as to new goods.... [A]mong the factors to be considered in determining the merchantability of used goods are (1) the extent of prior use, (2) the buyer's knowledge of the used goods, and (3) whether the price for the goods was significantly discounted at the time of sale." *McCormick Machinery, Inc. v. Julian E. Johnson & Sons, Inc.,* 523 So.2d 651 (Fla 1st DCA 1988); *see also International Petroleum Services, Inc. v. S & N Well Service, Inc.,* 230 Kan. 452, 639 P.2d 29 (1982).

### (a) Claim against Belmont Machinery

 Belmont Machinery claims that it altered the implied warranty of merchantability to limit its liability, so that even if it is found to have sold the machine to Montgomery Rubber, Montgomery Rubber's claim falls outside of the warranty, as altered. An implied warranty may be altered: "Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." 1975 Ala.Code § 7–2–316. The invoice Belmont Machinery alleges it sent Woody does state that the machine is sold "AS–IS." [12] (Capitalization in original). The invoice also states, however, that if the machine is found to be "mechanically unsatisfactory, it can be returned ... [f]or a full refund of purchase price." [13] And then, on the invoice sent from Woody to Montgomery Rubber, there was not any written limitation. There was no "as-is" clause on the invoice sent from Woody to Montgomery Rubber, nor was a method stated as to how unsatisfactory goods could be returned. Furthermore, on the bill of lading

showing that the boring mill was shipped to Montgomery Rubber from Belmont Machinery, and demonstrating that the mill was received by Montgomery Rubber on December 13, 2001, there is no such express limitation saying that the machine was sold "as-is," nor is there anything indicating that Montgomery Rubber had a specifically limited time within which to accept or reject the goods. Applying these standards to the case at bar, Montgomery Rubber has a claim for a breach of implied warranty of merchantability against Belmont Machinery. While the record is unclear regarding the extent of prior use, the buyer's knowledge of the goods, or whether the goods were significantly discounted, Montgomery Rubber contends that the boring mill was represented to it as a mill in working condition, and has submitted an affidavit to support this. Furthermore, as it is unclear whether Montgomery Rubber ever received the invoice Belmont Machinery sent to Woody, a reasonable jury could conclude that Montgomery Rubber never received the disclaimer included on Belmont Machinery's invoice, and therefore the warranty was not altered.

Belmont Machinery's summary-judgment motion will be denied on the breach-of-implied-warranty-of-merchantability claim.

### (b) Claim against Woody

 Montgomery Rubber contends that Woody was Belmont Machinery's agent. Assuming, for purposes of summary judgment, that this is true, Montgomery Rubber has produced no evidence that Woody did anything that would make Woody jointly liable, with Belmont Machinery, to Montgomery Rubber. While the proper remedy for a breach of implied

---

**12.** Belmont Machinary's motion to dismiss, filed March 25, 2003 (Doc. no. 7), Exhibit A (invoice).

**13.** *Id.*

warranty resulting in purely economic loss is against the seller and not the manufacturer, *Wellcraft Marine v. Zarzour*, 577 So.2d 414 (Ala.1990), only a principal, and not a principal's agent, is liable for an agent's actions that are within the agent's authority. *Sealy v. McElroy*, 288 Ala. 93, 257 So.2d 340, 350 (1972) ("An agent is presumed to intend to bind his principal only and to incur no personal liability and unless an intention to substitute or superadd his personal liability for or to that of his principal is clearly shown, he will not be bound in his individual capacity."). Montgomery Rubber has not alleged that Woody indicated, at any time, that he intended to bind himself personally. Therefore, presuming Woody was Belmont Machinery's agent, no reasonable jury could conclude that Woody is liable for Belmont Machinery's breach of implied warranty of merchantability.

Woody's summary-judgment motion will be granted on the breach-of-implied-warranty-of-merchantability claim.

### (3) *Breach of Implied Warranty of Fitness for Particular Use*

■ The Alabama Code states: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7–2–316 an implied warranty that the goods shall be fit for such purpose." 1975 Ala.Code § 7–2–315. This provision is intended to cover the sale of goods where the buyer relies on the seller's expertise to provide appropriate goods. 77A C.J.S. *Sales* § 258. Montgomery Rubber did not rely on Belmont Machinery or Woody to select an appropriate boring mill for Montgomery Rubber's business—Montgomery Rubber relied only on Belmont Machinery's assertion that the mill was in working condition.

Both Belmont Machinery's and Woody's summary-judgment motions will be granted on the breach-of-implied-warranty-of-fitness-for-particular-use claim.

### (4) *Breach of Express Warranty*

The relevant state statute on creating express warranties states, "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 1975 Ala.Code § 7–2–313. Montgomery Rubber claims that an express warranty as to the boring mill existed based on Brandli's statement that the mill was fully operable and would run.

### (a) *Claim against Belmont Machinery*

■ There is evidence that Montgomery Rubber never received Belmont Machinery's invoice that limited Belmont Machinery's liability; there is also evidence that Brandli represented to Montgomery Rubber that the machine would be in working condition once it had been wired and reassembled. Montgomery Rubber contends that Brandli's assertion that the boring mill was in working condition induced it to act. Of course, Belmont Machinery may produce evidence that disproves that it made such a representation to Montgomery Rubber, but whether the representation was made is an issue of credibility for the jury to decide.

Belmont Machinery's summary-judgment motion will be denied on the breach-of-express-warranty claim.

### (b) *Claim against Woody*

Montgomery Rubber has not produced any evidence, nor even alleged, that Woody supplied it with any express warranty. Therefore, Woody's summary-judgment motion will be granted on the breach-of-express-warranty claim.

**1304**

## IV. CONCLUSION

For the reasons stated above, Belmont Machinery's motion for summary judgment will be granted in part and denied in part, and Woody's motion for summary judgment will be granted in its entirety.[14] An appropriate order and judgment will be entered.

14. Although the court has granted Woody's motion for summary judgment in its entirety, Woody is still a party to this litigation. Woody still has pending a cross-claim against Belmont Machinery, and Belmont Machinery did not seek summary judgment on his cross-claim.